329 S.E.2d 77

**STATE ex rel. STATE OF W. VA. HUMAN RIGHTS COMMISSION and Rose Bradsher**

v.

**LOGAN–MINGO AREA MENTAL HEALTH AGENCY, INC.**

No. 16015.

Supreme Court of Appeals of West Virginia.

April 11, 1985.

Gail Ferguson, Asst. Atty. Gen., Charleston, for appellants.

John R. Glenn, Logan, for appellee.

McHUGH, Justice:

The West Virginia Human Rights Commission and Rose Bradsher appeal from a final order, dated September 24, 1982, entered in the Circuit Court of Logan County, reversing and setting aside the Commission's order of March 4, 1980, which found that the Logan-Mingo Area Mental Health Agency, Inc. had unlawfully discriminated against Ms. Bradsher, a black female employee, by coercing her resignation because of her race. This Court has before it the petition for appeal, records of the administrative and circuit court proceedings, and the briefs and oral arguments of counsel.

**I**

On August 19, 1974, Rose Marie Bradsher resigned from her position as an instructor at the Logan County Day Care Center. On September 12, 1974, she filed a complaint with the West Virginia Human Rights Commission, charging her employer[1] and her immediate supervisor with an unlawful discriminatory practice based on race. *W. Va. Code*, 5–11–9(a). The facts alleged in the complaint are as follows:

I am a 21 years old Black female.

On January 29, 1974, I began work as an Instructor at the Logan County Day Care Center for $350 a month. On August 16, 1974, one of our students got out of the classroom while I was attending to other students. Although Ms. Nancy Wilson was the last person to leave the room before the student got out—she must have left the door open— Ms. Gibson and I were put on probation because of this incident. However on August 19, 1974, Ms. Wilson called me in and told me that I must resign by 3:00

P.M. or that I would be fired. Although I have been on probation twice before the incident of August 16, 1974, both times were the result of unfair allegations against me.

I believe that I have been treated unfairly and also forced to resign because of my race. I therefore charge the Logan County Day Care Center and Nancy Wilson with race discrimination which is in violation of the West Virginia Human Rights Act, as amended.

On September 12, 1975, the Commission notified the employer that a probable cause determination had been made, and that *Code*, 5–11–10, required an immediate effort through conference and conciliation to eliminate the unlawful practice. On forms supplied by the Commission, the complainant indicated her willingness to enter conciliation discussions, but the employer declined to participate in such discussions.

At a meeting on May 20, 1977, the Commission voted in favor of a motion to conduct a public hearing in this case. The hearing was held on four days: December 15, 1977; April 17 and 18, 1978; and May 15, 1978. The hearing examiner, Charlotte Lane, submitted her findings of fact, conclusions of law, and proposed order on March 26, 1979. The hearing examiner concluded that the complainant had established a *prima facie* case of racial discrimination; that her discharge, or forced resignation, was not warranted; and that the disparate treatment accorded Ms. Bradsher and a white female employee (Duanne Gibson) constituted racial discrimination. The hearing examiner recommended that a back pay award of $8,750 be granted to compensate the complainant for wages lost while she was out of work.

On March 4, 1980, the Commission issued its findings of fact, conclusions of law, and order. The Commission's findings include a comparison between the complainant's work record and that of a white employee, Duanne Gibson. Both were instructors in a day care center for retarded children.

1. The complaint named the Logan County Day Care Center as a respondent. An amended complaint was filed on October 10, 1978, properly

naming Logan-Mingo Area Mental Health Agency, Inc. as a respondent.

Gibson acted as Bradsher's supervisor for a brief period. At the time of Bradsher's resignation, the two women shared the teaching duties in one of the classrooms of the day care center. The Commission found that both Gibson and Bradsher were responsible for an incident in which a six year-old boy managed to get outside the building. The day after the escape, Bradsher was forced to resign, and Gibson was placed on probation.

Ms. Bradsher's attendance record shows that she was absent from work twice without approval, absent from one parents' group meeting, and late for work twice. The first tardiness was 24 minutes; the second was ten minutes. Bradsher's personnel file also shows that she received a "warning of probation" for sending a note to one student's parents instructing them to keep the child home. With respect to Bradsher's work performance, the Commission found: "Except for the incidents noted in the personnel file the complainant had a good work record. Her co-workers and the parents seemed pleased with her job performance."

Duanne Gibson started working at the center six or seven months earlier than Ms. Bradsher. The Commission found no attendance or disciplinary problems in Gibson's personnel file prior to August 19, 1974.[2] During 1975 and 1976, she was tardy four times and absent one day without notifying her employer. The personnel file also reveals the following: Gibson received a reprimand for using the center telephone for personal reasons; other employees reported two separate incidents in which Gibson physically abused children; Gibson was placed on probation and relieved of her supervisory duties following the second incident; she was warned that any further physical abuse or punishment of students would result in suspension of employment; law enforcement officers visited the center twice, looking for Ms. Gibson in connection with "bad check" charges; she failed twice to turn in lesson plans, and, on one occasion, missed a sched-uled home visit. Gibson was terminated from employment on June 17, 1976, "due to neglect of job responsibilities."

The Commission found that charges against Gibson concerning physical abuse of children were more serious than the charge brought against Bradsher for allowing a child to get out of the classroom. The Commission found further that the employer held Bradsher to a higher standard of performance than was Gibson "because only a few complaints against Complainant precipitated her termination, while numerous complaints of a more serious nature over a longer period of time against Ms. Gibson were tolerated."

The Commission concluded that the complainant had established a *prima facie* case of racial discrimination, based on disparate treatment, and that the complainant was entitled to compensation for lost wages and for humiliation and suffering. The employer was ordered to cease and desist from all unlawful discriminatory practices; to prepare and distribute a written sttement of nondiscriminatory policies; to provide, for the next three years, copies of the policy statement to new employees; to cause all officials, supervisors, and agents, both at present and those hired in the next three years, to sign a statement indicating that he or she has been advised of the employer's nondiscriminatory policies; to display prominently the poster of the Commission advising the public of their rights under the W.Va. Human Rights Act; and to include in all future advertising the phrase "Equal Opportunity Employer," and not to modify its advertising to avoid this requirement.

As damages, the Commissioner ordered the employer to pay the complainant $8,750 in back pay, with 6% interest per annum from August 19, 1974, until the award was actually paid; and $1,250 for incidental damages for humiliation, embarrassment, emotional and mental distress, and loss of personal dignity.

The employer appealed the Commission's decision to the Circuit Court of Logan

2. The record shows that Ms. Gibson's personnel file was stolen in May of 1975. Information relating to Ms. Gibson's work performance prior to that date was therefore unavailable.

County on April 7, 1980. The record was transmitted to the circuit court but was later recalled by the Commission, which needed the record as an aid in writing the order in a second claim filed by Ms. Bradsher. No further action was taken until October 15, 1981, when the parties appeared at a pre-trial conference. The judge to whom the case had been assigned recused himself on the ground that his wife worked as a dietician for the Logan-Mingo Area Mental Health Agency. Following reassignment to another judge, the case was submitted on briefs.

On August 5, 1982, the trial court issued an opinion in which it found that the Commission's decision was clearly wrong; that the discharge of the complainant was justified; and that the claimant had failed to establish a *prima facie* case of racial discrimination.

The final order, reversing the Commission's decision, was entered on September 14, 1982, and this appeal followed.

## II

Discrimination by employers on the basis of race has been declared an unlawful practice. *W.Va.Code*, 5–11–9 [1981], provides, in pertinent part:

It shall be an unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or except where based upon applicable security regulations established by the United States or the State of West Virginia or its agencies or political subdivisions:

(a) For any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is blind or handicapped....

"Discriminate" and "discrimination" mean "to exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, age, blindness or handicap and includes to separate or segregate." *W.Va.Code*, 5–11–3 [1981].

In *Shepherdstown V.F.D. v. W.Va. Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983), we adopted the evidentiary standards for proof of unlawful employment discrimination under Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000 *et seq.* devised by the United States Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); and we applied these standards to claims of unlawful discrimination pursuant to our Human Rights Act. Syllabus point 3, in part, of *Shepherdstown VFD v. WVHRC, supra* concisely maps the progression of an employment discrimination case:

In an action to redress unlawful discriminatory practices in employment and access to 'place[s] of public accommodations' under The West Virginia Human Rights Act, *as amended, W.Va.Code,* 5–11–1 *et seq.,* the burden is upon the complainant to prove by a preponderance of the evidence a prima facie case of discrimination.... If the complainant is successful in creating this rebuttable presumption of discrimination, the burden then shifts to the respondent to offer some legitimate and nondiscriminatory reason for the rejections. Should the respondent succeed in rebutting the presumption of discrimination, then the complainant has the opportunity to prove by a preponderance of the evidence that the reasons offered by the respondent were merely a pretext for the unlawful discrimination.

In applying the *McDonnell Douglas-Burdine* standards to proof of unlawful discrimination under the W.Va. Human Rights Act, *W.Va.Code,* 5–11–1, *et seq.,* we also adopted the *McDonnell Douglas* formulation of a *prima facie* case. Again, in syllabus point 3, we held, in part:

In an action to redress unlawful discriminatory practices in employment and access to 'place[s] of public accommodations under The West Virginia Human

Rights Act, *as amended, W.Va.Code,* 5–11–1 *et seq.,* the burden is upon the complainant to prove by a preponderance of the evidence a prima facie case of discrimination, which burden may be carried by showing (1) that the complainant belongs to a protected group under the statute; (2) that he or she applied and was qualified for the position or opening; (3) that he or she was rejected despite his or her qualifications; and (4) that after the rejection, the respondent continued to accept the applications of similarly qualified persons....

*Shepherdstown VFD v. W. Va. Human Rights Commission, supra.*

The *McDonnell Douglas* Title VII standards were directly applicable to the employment situations in *Shepherdstown VFD* because those cases involved unlawful hiring practices. The U.S. Supreme Court observed in *Green:* "The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." 411 U.S. at 802, n. 13. *See also Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957, 966 (1978).

We recognize that in a case of alleged race-based discriminatory discharge, the *McDonnell Douglas* formulation must be modified. *See* Larson 3 Employment Discrimination § 86.40. In denying summary judgment in a disparate treatment, gender-based discriminatory discharge case, brought under Title VII, Judge Charles H. Haden II, Chief Judge of the United States District Court for the Southern District of West Virginia, recently stated:

Defendant correctly points out that the seminal case outlining the requisite showing under Title VII in a hiring situation is *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); the Court cannot agree, however, that this case requires a ritualistic application of the *McDonnell Douglas* factors either on a motion for summary judgment or at trial. For the Court to require Plaintiff to present her case of discriminatory discharge in the form intended to suit a discriminatory *hiring* charge would be to set Plaintiff the task of pounding a square peg into a round hole, to borrow a well-worn cliche.

*Burdette v. FMC Corporation,* 566 F.Supp. 808 (N.D.W.Va.1983).

In *Burdette,* a female employee was fired because of her "personal involvement" with a male co-worker. The man was not disciplined in any way. The court designed the following *prima facie* case to test the Title VII claim: "1. That Plaintiff is a member of a protected class; 2. That Plaintiff and a nonmember engaged in similar prohibited activity; and 3. That disciplinary measures enforced against Plaintiff were more severe than those imposed upon the nonmember."

These elements, which a complainant must prove by a preponderance of the evidence, go to the heart of an unlawful discrimination case. "The ultimate issue in the area of disparate disciplinary treatment has been framed generally as follows: Whether members of a protected group were accorded different treatment than nonmembers engaged in similar activity." *Burdette v. FMC Corp., supra* 566 F.Supp. at 815. *See also McDonnell Douglas v. Green, supra,* 411 U.S. at 804, 93 S.Ct. at 1825–6, 36 L.Ed.2d at 679; *McDonald v. Sante Fe Trail Transportation Co.,* 427 U.S. 273, 281–5, 96 S.Ct. 2574, 2579–85, 49 L.Ed.2d 493 (1975).

The Fourth Circuit Court of Appeals has recently spoken approvingly of *Burdette:*

The most important variables in the disciplinary context, and the most likely sources of different but nondiscriminatory treatment, are the nature of the offenses committed and the nature of the punishments imposed. The purpose of the prima facie requirement is therefore served and the requirement met upon a showing (1) that plaintiff engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin, and (2) that disciplinary measures enforced against the plaintiff were more severe than those

enforced against the other person. Cf. *Burdette*, 566 F.Supp. at 815.

*Moore v. City of Charlotte,* 754 F.2d 1100, (4th Cir.1985).

Other courts have composed variations on the *prima facie* theme. In a case where a female electrician charged her employer with sex-based discrimination evidenced by dismissal under circumstances in which men were not also fired, the Fifth Circuit Court of Appeals reviewed its standards for testing a *prima facie* case:

In a number of cases, we have held that employees discharged for violation of work rules can establish a prima facie case of unlawful discrimination by showing simply that they were discharged and that a person who did not belong to a minority was retained 'under apparently similar circumstances.' *See, Davin v. Delta Airlines, Inc.,* 678 F.2d 567, 570 (5th Cir.1982); *Rohde v. K.O. Steel Casting, Inc.,* 649 F.2d 317, 322–23 (5th Cir. 1981); *Green v. Armstrong Rubber Co.,* 612 F.2d 967, 968 (5th Cir.), *cert. denied* 449 U.S. 879, 101 S.Ct. 227, 66 L.Ed.2d 102 (1980); *Turner v. Texas Instruments, Inc.,* 555 F.2d 1251, 1254–55 (5th Cir.1977). In *Brown v. A.J. Gerrard Mfg. Co.,* 643 F.2d 273, 276 (5th Cir.1981), we set out a four part test for demonstrating a prima facie case for discriminatory discharge due to unequal imposition of discipline:

(1) That plaintiff was a member of a protected group;

(2) That there was a company policy or practice concerning the activity for which he or she was discharged;

(3) That non-minority employees either were given the benefit of a lenient company practice or were not held to compliance with a strict company policy; and

(4) That the minority employee was disciplined either without the application of a lenient policy, or in conformity with the strict one.

*E.E.O.C. v. Brown & Root, Inc.,* 688 F.2d 338, 340–1 (5th Cir.1982).

Where race-based discriminatory discharge was alleged, the Eleventh Circuit Court of Appeals stated:

We have consistently held that a plaintiff fired for misconduct makes out a prima facie case of discriminatory discharge if he shows that he is a member of a protected class, that he was qualified for the job from which he was fired, and 'that the misconduct for which [he] was discharged was nearly identical to that engaged in by [an employee outside the protected class] whom [the employer] retained.' (citations omitted). The prima facie case is established even if the plaintiff's replacement is also a member of the protected class. (citations omitted).

*Nix v. WLCY/Rahall Communications,* 738 F.2d 1181, 1185–6 (11th Cir.1984).

In such cases the plaintiff is required to prove a prima facie case consisting of variable elements that once proven by a preponderance of the evidence create an inference of racial animus. *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2948, 2949, 57 L.Ed.2d 957, 967 (1978). *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677. Fundamentally, the plaintiff must prove that he or she is a member of a class entitled to the protection of title VII and that he or she has been treated differently from other similarly situated employees who are not members of the class. *Potter v. Goodwill Industries of Cleveland,* 518 F.2d 864, 865 (6th Cir.1975).

*Newport Shipyard v. R.I. Commission for Human Rights,* R.I., 484 A.2d 893, 898 (1984).

In designating the elements of a prima facie case for use in a disparate treatment, discriminatory discharge claim, the court in *Burdette v. FMC, supra,* eliminated the second and fourth of the *McDonnell Douglas* factors.

It is noted that *McDonnell Douglas'* second element, that Plaintiff prove her qualifications for the position she occupied, has been omitted in this action. The reason is that, as noted by several commentators, while the requirement of qualification carries primary significance in the hiring sphere, a plaintiff who is already in the employ of a defendant can,

for the purposes of a *prima facie* showing, be presumed qualified merely by the fact of her employment. 3 *Larson Employment Discrimination, supra,* § 86.40 at 17–18.1. The Court is of the opinion that a demonstration of Plaintiff's qualifications is more appropriate as proof of the pretextual nature of Defendant's justification than as a part of her initial burden.

. . . .

The same reasoning applies to this Court's omission of the fourth *McDonnell Douglas* factor, i.e., that the Defendant continued seeking an employee of Plaintiff's qualifications. . . . Since the issue here revolves around whether Defendant did, in fact, discharge Plaintiff merely because of the prohibited activity also engaged in by her co-employee who was *not* discharged, the Defendant's continued seeking of a person with Plaintiff's qualifications or superior qualifications is more relevant to Defendant's defense, and to Plaintiff's proof of pretext, if it is relevant.

The fact is, of course, conceivable that Defendant will not raise this defense. What this signifies to the Court is, however, that the element of 'continued seeking' is not truly relevant to a disparate treatment discharge case.

... Thus, in disparate treatment cases such as this, where proof of the Defendant's intent will become critical, the continued seeking element 'may be dispensed with.'

566 F.Supp. at 816–17. *See also Peters v. Jefferson Chemical Co.,* 516 F.2d 447, 450 (5th Cir.1977); *King v. New Hampshire Dept. of Resources and Economic Development,* 420 F.Supp. 1317 (D.N.H.1976) *aff'd,* 562 F.2d 80 (1st Cir.1977).

■ We find the reasoning used by Chief Judge Haden, a former Chief Justice of this Court, in *Burdette* persuasive. We therefore hold that a complainant in a disparate treatment, discriminatory discharge case brought under the West Virginia Human Rights Act, *Code,* 5–11–1, *et seq.,* may meet the initial *prima facie* burden by proving, by a preponderance of the evidence, (1) that the complainant is a member of a group protected by the Act; (2) that the complainant was discharged, or forced to resign, from employment; and (3) that a nonmember of the protected group was not disciplined, or was disciplined less severely, than the complainant, though both engaged in similar conduct.

### III

Having determined what constitutes a *prima facie* case of discriminatory discharge, we turn to the reviewing court's decision that the complainant failed to establish a *prima facie* case.

■ The limited scope of the circuit court's review of an order or decision of the Commission is recognized at Syl. pt. 2, *Shepherdstown VFD v. WVHRC,* supra:

Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are: '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'

■ "West Virginia Human Rights Commission's findings of fact should be sustained by reviewing courts if they are supported by substantial evidence or are unchallenged by the parties." Syl. pt. 1, *West Virginia Human Rights Commission v. United Transportation Union, Local 655,* 167 W.Va. 282, 280 S.E.2d 653 (1981).

In actions brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the United States Supreme Court has held that:

discriminatory intent is a finding of fact to be made by the trial court; it is not a question of law and not a mixed question of law of fact of the kind that in some cases may allow an appellate court to review the facts to see if they satisfy some legal concept of discriminatory intent. [footnote omitted]. Discriminatory intent here means actual motive; it is not a legal presumption to be drawn from a factual showing of something less than actual motive. Thus a court of appeals may only reverse a district court's finding on discriminatory intent if it concludes that the finding is clearly erroneous under Rule 52(a).

*Pullman-Standard v. Swint,* 456 U.S. 273, 289–90, 102 S.Ct. 1781, 1790–1, 72 L.Ed.2d 66, 80–1 (1982). *See also Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), *reversing* 717 F.2d 149 (4th Cir.1983).

We hold that a determination, by the West Virginia Human Rights Commission, that an employer has accorded disparate treatment to members of different races, is a finding of fact which may not be reversed by a circuit court upon review, unless such finding is clearly wrong in view of the reliable, probative and substantial evidence on the whole record.

Upon its review of the administrative record, the circuit court determined that the Commission was clearly wrong in finding the discharge of the complainant to be unjustified.

The court concluded: "It is the view of this Court, and the Court so holds, that the complainant failed to establish a prima facie case in that although she was a member of the minority group, her discharge was justifiable from the facts as revealed by the evidence in the record herein."

Under the standards discussed above, the circuit court was wrong in requiring that complainant prove, as part of her *prima facie* showing, that the discharge was unjustified. The justifiability of the discharge, like the "qualification for employment" factor, is more appropriately included in the employer's burden to articulate a legitimate nondiscriminatory reason for the discharge. The evidence of inconsistent treatment, presented by the complainant, was sufficient to meet the initial burden of raising an inference of unlawful discrimination.

The Commission also erroneously required the complainant to show, as part of her initial burden, "that the conduct for which she was discharged did not justify such action." The court compounded, rather than corrected, the Commission's mistake of law when it tacitly accepted the Commission's formulation of the appropriate *prima facie* case.

The circuit court placed too heavy a burden on the complainant, and therefore incorrectly concluded that she had not established a *prima facie* case of racial discrimination. *See U.S. Postal Service Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983).

The court's finding that the discharge was justifiable is significant in the overall *McDonnell Douglas v. Green* scheme. Properly applied, this finding means that the employer successfully rebutted the complainant's case. In this regard, we believe the Commission placed too heavy a burden on the employer, who "bears only the burden of explaining clearly the nondiscriminatory reasons for its actions." *Texas Dept. of Community Affairs v. Burdine, supra* 450 U.S. at 260, 101 S.Ct. at 1089, 67 L.Ed.2d at 219 (1981). *See Shepherdstown VFD v. WVHRC, supra* 309 S.E.2d at 352. It is clear that the employer here met its burden by offering evidence that the complainant's discharge was motivated by poor attendance and work performance.

Finally, the circuit court erred by failing to consider whether the reason of-

fered by the employer was a pretext.[3] The Commission found overwhelming evidence of disparate treatment. Although evidence of disparate treatment is utilized in establishing a prima facie case, such evidence is also probative of pretext. *McDonnell Douglas v. Green, supra* 411 U.S. at 804, 93 S.Ct. at 1825–6, 36 L.Ed.2d at 679.

> [P]roof of pretext 'merges with the ultimate burden of persuading the court that [Plaintiff] has been the victim of intentional discrimination. She may succeed in this either directly by persuading the Court that a discriminatory reason more likely motivated the employer [i.e., through her *prima facie* case], or indirectly by showing that the employer's proffered explanation is unworthy of credence [i.e., through proof of pretext].' *Burdine, supra* 101 S.Ct. at 1095. *See McDonnell Douglas, supra,* 411 U.S. at 804–805, 93 S.Ct. at 1825. *See also Aikens, supra* 103 S.Ct. at 1483 (Blackmun, J. concurring).

*Burdette v. FMC, supra,* 566 F.Supp. at 816.

■ The circuit court did not review the findings of fact by the Commission with respect to disparate treatment. The Commission found that the employer held the complainant to a much higher standard of performance than that required of a white employee. This finding is supported by substantial evidence in the record, which is sufficient to prove that the employer's reason for dismissing the complainant was a pretext for unlawful discrimination.

### IV

■ The appellee contends that the award of $1250 in damages, for humiliation, embarrassment, emotional and mental distress, and loss of personal dignity, is not supported by the evidence. We disagree.

The Commission made the following findings, accompanied by references to the record evidence:

> Because of her inability to find a job the complainant suffered a nervous disorder and was forced to seek medical attention at Logan General Hospital. (TR 90, 354). The Complainant was humiliated by her financial dependence on her parents, and her unemployed status. (TR 91, 92). Her mother testified that her inability to obtain a job caused her hair to fall out (TR 354), made her afraid to be by herself (TR 355) and resulted in her losing weight (TR 355).

■ These findings are substantiated by the record and are sufficient to support the Commission's award. Moreover, as we held in the syllabus of *Pearlman v. WVHRC,* 161 W.Va. 1, 239 S.E.2d 145 (1977): "The West Virginia Human Rights Commission as part of its cease and desist orders may award to complainant incidental damages as compensation for humiliation, embarrassment, emotional and mental distress, and loss of personal dignity, without proof of monetary loss. *W.Va.Code,* 5–11–8."

The appellee also contends that the back-pay award, ordered by the Commission, was unjustified and unfair because the Commission made a similar award to Ms. Bradsher, covering the same period of time, in a claim against a hospital that failed to hire her. The appellee asserts that the respondent hospital in the second claim is trying to appeal the Commission's order. The record is devoid of any facts upon which to determine whether Ms. Bradsher has received a double recovery. We therefore decline to address this issue.

Although the Commission's legal analysis was defective, its ultimate decision was not clearly wrong, based on substantial evidence in the entire record, and should have been affirmed on appeal to the circuit court. Accordingly, the final order of the

---

**3.** Neither the Commission nor the reviewing court fully analyzed the evidence under the *McDonnell Douglas* standards. The Commission found an unrebutted *prima facie* case of discrimination; in the opinion of the reviewing court, however, the complainant failed to establish a *prima facie* case. Thus, neither tribunal expressly took the final step of determining whether the employer's proffered reason for the discharge was pretextual, i.e., a coverup for proscribed discriminatory activity.

Circuit Court of Logan County is reversed and the final order of the West Virginia Human Rights Commission is reinstated.

Reversed.