376 S.E.2d 134

### MINGO COUNTY EQUAL OPPORTUNITY COUNCIL and Headstart Director

v.

### STATE of West Virginia HUMAN RIGHTS COMMISSION and Roberta Whitt.

### No. 18191.

Supreme Court of Appeals of West Virginia.

Nov. 30, 1988.

---

Herbert H. Henderson, Henderson & Henderson, Huntington, for Mingo County Equal Opportunity.

Charles R. Garten, Charleston, for appellee.

BROTHERTON, Justice:

This case involves an appeal by the respondents-appellants, the Mingo Area Equal Opportunity Council (EOC) and the Headstart Director, Peggy Childress, from the decision of the West Virginia Human Rights Commission, which found the EOC and Ms. Childress had discriminated against the complainant-appellee, Roberta Whitt, because of her age. Mrs. Whitt, a Headstart teacher at the Varney Center, was suspended after reports were received that she had left children unattended on the playground and had spanked a child in contradiction of Headstart rules.

Mrs. Whitt, age 62, was a Headstart teacher at the Varney Center in April, 1985. On April 17, 1985, Mr. and Mrs. Muncey noticed two children playing unsupervised with the car gates outside the Varney side of the Varney–Delbarton

Headstart Center as they drove by.[1] They reported the incident to the Headstart Director and signed a statement to that effect. On April 24, 1985, two volunteer parents reported that at approximately 11:30 a.m. on April 18, 1985, they overheard a child at the Varney Headstart Center being spanked. The parents tendered unsigned statements to Ms. Childress, the Director of the Headstart Program. The statements revealed that neither parent actually witnessed the alleged spanking, but overheard "the older lady" spanking a child with an open hand and saying "We are not going to put up with this."

Ms. Childress did not suspend the appellee until after an initial investigation. In the course of the investigation, she learned Mrs. Whitt maintained a paddle in her classroom. Mrs. Whitt was suspended on April 24, 1985. Because the suspension occurred on the last day of school, Mrs. Whitt lost only one day of pay. She requested a hearing.[2]

Mrs. Whitt alleges that shortly thereafter, she and her daughter met with Larry Hamrick, the Executive Director of the EOC, who offered to help her obtain Social Security Disability Benefits and insurance if she would retire. He allegedly stated she was not able to take care of the children like she used to because she was "getting up" in years. Mrs. Whitt also claims that Mr. Hamrick, in an effort to resolve the matter, told her former attorney, Ms. McCune, that "just between us, we know that Mrs. Whitt was fired because she was too old and too sick, but I think that we can work something out." Mr. Hamrick later admitted that he had offered to reinstate Mrs. Whitt with back pay in order to settle the case after the two parent-witnesses refused to testify. He denied, however, that he ever made statements concerning her age.

A policy council meeting was held on May 29, 1985. At that time, the policy council voted to uphold the suspension based on the two separate incidents. Mrs. Whitt appealed and filed a complaint with the Human Rights Commission, alleging discrimination based on age and handicap.

A Human Rights Commission hearing was held on May 22, 1986. Mrs. Whitt testified that she had never missed work because of her alleged high blood pressure handicap, which remained stable as long as she took her medication.[3] Mrs. Whitt then denied that she had spanked anyone on April 18, 1985, and explained that the Headstart bus driver, Lucy Dillon, had spanked her own child that morning.[4] Mrs. Dillon also testified, admitting that she spanked her child at 9:00 a.m. on April 18, 1985.

Mrs. Whitt alleged that there was no true policy of employee suspension upon the spanking of a student. The EOC, however, introduced a Headstart Program memorandum dated November 18, 1981, which stated that all paddles were to be removed from the classroom and that any employee responsible for spanking a child would be immediately suspended.[5] The appellants also introduced an April 9, 1985, memorandum from the United States Department of Health and Human Services which stated that the agency would develop a plan to deal with suspected or actual child abuse. In their brief, the EOC reports that

---

1. The Varney–Delbarton Headstart Center is one building divided administratively into two separate Headstart Centers.

2. In her complaint, Mrs. Whitt alleges she was suspended on April 27, 1985. However, that discrepancy is not material as both parties agree that only one day of back pay is at issue.

3. We note for the record that the appellee includes in her charges a complaint of discrimination based upon her "handicap" high blood pressure. However, we do not find any evidence that this condition has handicapped her in her employment. She testified that her blood pressure remains at a safe and controlled level as long as she takes her medication and that she has not missed work due to that condition. In fact, the hearing examiner noted at paragraph 5 of his findings of fact that the appellee has accumulated 225 days of sick leave because she has not had to miss work due to illness.

4. On April 18, 1985, only the Varney Center was operating that day, as the Delbarton staff was attending an in-service day in Ripley, West Virginia.

5. *See* Appellants' Exhibit No. 1.

they had already informed their employees that anyone suspected of child abuse would be suspended.[6] Finally, Director Childress testified that three employees were suspended on separate occasions because of paddlings. Upon questioning, Mrs. Whitt admitted that she was aware of at least one other teacher who had been suspended for paddling a child.

Further testimony was elicited from Headstart employees and parents who stated they had seen unsupervised children playing on the playground and closing the car gates. Several witnesses also testified that they had heard Mrs. Whitt threaten to "whip" children. Ms. Justice, the cook at the Headstart Center, testified that she had seen Mrs. Whitt spank children with her hand on several occasions.

On November 19, 1986, the hearing examiner issued his recommended findings of fact and conclusions of law. The hearing examiner stated that the testimony of the complainant's witnesses were "more worthy of credit" than the testimony of the respondent's witnesses. Specifically, he found the respondents had failed to produce credible evidence that the decision to suspend Mrs. Whitt would have occurred absent her age and health, while Mrs. Whitt produced direct evidence that her age and perceived health handicap were viewed negatively. The hearing examiner recommended the complainant be awarded $30.00 in back pay, incidental damages of $5,000.00 for humiliation, and her attorney fees. He also recommended that an order be issued directing the EOC to cease and desist any discriminatory practices, requiring quarterly reports concerning employee discipline for a two-year period. Finally, the hearing examiner granted the complainant's motion to join Director Childress as a party, making her individually and jointly liable for damages.

By order dated April 10, 1987, the Human Rights Commission adopted the recommended decision, except for the finding which joined Director Childress. This proceeding is the appellants' appeal from that final order. The appellee, Mrs. Whitt, files

a cross appeal from that portion of the order which rejected her motion to hold Director Childress individually and jointly liable for the damages.

The issue on appeal is whether the appellants unlawfully discriminated against the appellee because of her age and health by suspending her from employment following the reports of the children being left unattended and the spanking incident. For the reasons stated below, we find that the appellants did not discriminate against the appellee because of her age and health, and accordingly reverse the April 10, 1987, order of the Human Rights Commission.

In reaching that conclusion, we first examined whether the plaintiff had proved a prima facie case of age discrimination. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the United States Supreme Court pointed out that the elements necessary to make a prima facie case would vary according to the facts in each case. 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13, 36 L.Ed.2d at 677–78 n. 13. In *McDonnell Douglas*, a case which involved racial discrimination in hiring practices, the Court suggested that the initial burden could be carried by a person who establishes "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S. at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677.

We addressed similar issues in *State ex rel. State of West Virginia Human Rights Commission v. Logan–Mingo Area Mental Health Agency*, 174 W.Va. 711, 329 S.E.2d 77 (1985), in which a black employee was coerced into resigning because of her race. In holding that the employer unlawfully discriminated against the complainant, we decided that the *McDonnell Douglas* test required modification in order to apply to race-based discriminatory dis-

---

**6.** *See* Appellants' Exhibit No. 9.

charge cases and developed a test applicable to that specific situation. 174 W.Va. at 717, 329 S.E.2d at 83.[7]

■■■ The *Logan–Mingo* test, however, is limited in use to the narrow fact situation described. Thus, in *Conaway v. Eastern Associated Coal,* 178 W.Va. 164, 358 S.E.2d 423 (1986), we addressed the general issue of discriminatory discharge. After analyzing the *McDonnell Douglas* test and the standard enunciated in *Loeb v. Textron, Inc.,* 600 F.2d 1003 (1st Cir.1979),[8] this Court developed the following test applicable to cases involving discriminatory discharge and a protected class:

(1) That the plaintiff is a member of a protected class.

(2) That the employer made an adverse decision concerning the plaintiff.

(3) But for the plaintiff's protected status, the adverse decision would not have been made.

178 W.Va. at 170, 358 S.E.2d at 429. Once the plaintiff proves the three elements, the burden then shifts to the respondent to show a nondiscriminatory reason, which does not need to be a "particularly good one." *Id.* 178 W.Va. at 171, 358 S.E.2d at 430. However, the complainant may still prevail if it can be shown that the proffered reason was merely a pretext for a discriminatory motive. *Id.* 178 W.Va. at 171, 358 S.E.2d at 430.[9] Because of the difficult nature of discrimination suits, we noted that the necessary proof did not have to be direct. *Id.* 178 W.Va. at 170, 358 S.E.2d at 429.

■ Turning to the present situation, it is evident the appellee easily proved the first and second elements of the *Conaway* test. Mrs. Whitt was sixty-two years of age at the time of the alleged discrimination and was suspended, clearly an adverse action. We also believe the appellee has shown sufficient evidence to satisfy the third element of the test. The appellee presented testimony that after the suspension occurred, the director of the EOC tried to persuade her to retire because of her age and health. The director denied that statement.[10] Nonetheless, that testimony is sufficient to give rise to the inference that the employer's decision was based upon discriminatory criteria.

However, the appellants have presented sufficient evidence to convince us the reason for the suspension was non-discriminatory.[11] The appellants introduced evidence

**7.** In syllabus point 2, we set out the test as follows:

A complainant in a disparate treatment, discriminatory discharge case brought under the West Virginia Human Rights Act, *Code,* 5–11–1, *et seq.,* may meet the initial *prima facie* burden by proving, by a preponderance of the evidence, (1) that the complainant is a member of a group protected by the Act; (2) that the complainant was discharged, or forced to resign, from employment; and (3) that a non-member of the protected group was not disciplined, or was disciplined less severely, than the complainant, though both engaged in similar conduct.

174 W.Va. at 714, 329 S.E.2d at 79.

**8.** In *Loeb,* the First Circuit adapted the *McDonnell Douglas* test to a situation involving wrongful discharge due to age discrimination. The court stated that:

the critical elements (beyond being within the protected class, *i.e.,* age 40–65, and fired) must be modified to produce an analogous inference. Complainant would be required to show that he was "qualified" in the sense that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance, absolute or relative. *See [International Brotherhood of] Teamsters,*

*[v. United States et al. T.I.M.E. D.C. Inc.* ], 431 U.S. [324] at 358 n. 44, 97 S.Ct. 1843 [1866 n. 44, 52 L.Ed.2d 396 (1977) ]. He would also have to show that his employer sought a replacement with qualifications similar to his own, thus demonstrating a continued need for the same services and skills.

600 F.2d at 1013 (footnotes omitted).

In *Conaway,* however, we concluded that the *Loeb* standard placed too heavy a burden on the plaintiff, noting few employees could point to a perfect record. 178 W.Va. at 169, 358 S.E.2d at 428. We also observed that it was the employer's burden to show a nondiscriminatory reason for the discharge. *Id.* 178 W.Va. at 170, 358 S.E.2d at 429. Consequently, we developed our test in *Conaway.*

**9.** *See Shepherdstown V.F.D. v. West Virginia Human Rights Commission,* 172 W.Va. 627, 637, 309 S.E.2d 342, 352 (1983).

**10.** In *Conaway,* we noted that the evidence necessary to prove a prima facie case "could, for example, come in the form of an admission by the employer...." *Id.* 178 W.Va. at 171, 358 S.E.2d at 430.

**11.** In claiming the suspension was solely due to her age and health, the appellee ignored the genuine issues of whether she spanked a child

which documented Headstart's policy which prohibited spanking and the maintenance of paddles in the classroom.[12] The appellants also presented evidence of three separate occasions where teachers were suspended after spanking a child. We note that in *Conaway,* the appellant's reason for the action did not have to be a good one as long as it was nondiscriminatory. 178 W.Va. at 171, 358 S.E.2d at 430. Nonetheless, in this situation, we believe the appellants' reason for the suspension—the safety and welfare of the students—to be nondiscriminatory and a very good one.[13]

Of course, the appellee then has the opportunity to demonstrate that the reason offered by the appellants was a pretext. In this situation, we find that the appellee failed to present any evidence which would suggest the appellant's reason was a pretext for a discriminatory motive.[14] The appellee contends that no real Headstart policy against spanking exists. However, we find persuasive the evidence introduced by the appellants showing three other teachers had been suspended following spanking incidents. The appellee also points to the fact that she was not suspended immediately, presumably as evidence

that the suspension was actually due to her age. Regardless of when the suspension actually occurred, we are not convinced that the additional time before the suspension was sufficient proof that she would not have been suspended absent her age. The appellee ignores the fact that the statements from the two parent-witnesses were not received until April 24, 1985, on or about the day of the suspension.[15] We conclude that the appellee failed to show that the appellants' reason for the suspension was a pretext, and consequently, that the appellants did not discriminate against her because of her age.

We do not suggest that Mrs. Whitt is guilty of either spanking the unfortunate child or of leaving the children unsupervised. That issue is not ours to decide at this point. Rather, we find that the appellants have presented a nondiscriminatory reason for the suspension sufficient to rebut the inference of discriminatory intent created by the appellee's prima facie case. We conclude that in this situation, the EOC and Headstart Director were within their authority to suspend the appellee pending further investigation of the charges, and

---

in direct contradiction of Headstart policy and whether she left children unsupervised on the playground.

The appellee believes that the testimony of Ms. Dillon, who admitted she had spanked her child at 9:00 a.m. the day in question, removes the issues from consideration in this matter. We disagree and point to the reports of the two volunteer parents who overheard the alleged incident at approximately 11:30 a.m. It is evident that a genuine issue existed as to if she spanked a child.

**12.** *See* Appellants' Exhibits 1 and 9.

**13.** We also find error in the hearing examiner's application of the law to the facts of this case. The hearing examiner erroneously stated that once the appellee produced credible evidence that her age and handicap were the determining factors in the decision, the burden shifted to the appellants to prove the decision would have been reached absent the discriminatory factors. It is clear that under *Conaway,* the burden is on the appellee to prove that but for her status as a member of a protected age group, she would not have been suspended. Only after the appellee proves that element does the burden shift to the appellants. That error is harmless, how-

ever, given our finding that the appellant presented sufficient proof to show the suspension to be nondiscriminatory.

**14.** *See* Schlei & Grossman, Employment Discrimination Law, 597–600 (2d ed. 1983) for a discussion of the complainant's burden to show the employer's reason was a pretext for a discriminatory motive. For example, the authors state a black employee, who had been discharged for violating a company rule, could sustain the burden of demonstrating a pretext by showing several comparably situated white employees had not been discharged for violating the same rule. However, the authors note that disparate treatment cannot be proved solely on the basis of statistics. *See generally Rowe v. Bailar,* 20 FEP 912 (D.D.C.1979); *Anderson v. Methodist Evangelical Hospital, Inc.,* 4 FEP 33 (W.D.Ky.1971), *aff'd,* 464 F.2d 723, 4 FEP 987 (6th Cir.1972).

**15.** There is, of course, some controversy regarding when the suspension actually occurred. In her complaint, the appellee alleges she was suspended on April 27, 1985. The hearing examiner and the appellant list April 24, 1985, as the suspension date.

we reverse the decision of the Human Rights Commission.

REVERSED.