382 S.E.2d 562

**WESTMORELAND COAL COMPANY**

v.

**WEST VIRGINIA HUMAN RIGHTS COMMISSION and Shirley A. Boone.**

No. 18271.

Supreme Court of Appeals of West Virginia.

July 5, 1989.

Carole L. Scotti, Scotti & Gerl, Lewisburg, for Shirley A. Boone.

Bethany R. Boyd, Asst. Atty. Gen., Charleston, for WV HRC.

Michael T. Chaney, Karen S. Rodgers, Kay Casto & Chaney, Charleston, for Westmoreland Coal Co.

Emily A. Spiler, Charleston, for amici curiae.

McHUGH, Justice:

This case is before the Court upon the appeal of Shirley A. Boone and the West Virginia Human Rights Commission from the Circuit Court of Nicholas County, which affirmed in part, and reversed in part, the decision of the West Virginia Human Rights Commission. The appellant contends that the circuit court committed reversible error when it substituted its view of the facts for those of the hearing examiner, who found that the complainant was sexually harassed when her supervisor, the Assistant General Mine Foreman (foreman) explicitly linked the complainant's likelihood of remaining employed to her willingness to engage in sexual contact with him. We reverse in part, affirm in part, and remand the case to the West Virginia Human Rights Commission for the fashioning of an administrative remedy consistent with *Bishop Coal Co. v. Salyers*, 181 W.Va. 71, 380 S.E.2d 238 (1989).

I

In 1976, Shirley Boone began working for Westmoreland Coal Company, at its Nicholas County mine. From 1976 through 1982, she was steadily promoted through the ranks to the management position of assistant foreman. Her chief duty was that of airway examiner, but she occasionally performed other tasks. Ms. Boone discovered in late 1982 that she had a very serious illness. She worked until December 7, 1982, then took sick leave for an operation until February 28, 1983. When her sick leave terminated, she was laid off.

■ Ms. Boone filed a complaint with the West Virginia Human Rights Commission ("the Commission"), alleging that during 1980–82 she was consistently sexually harassed by her foreman.[1] She sought

1. Ms. Boone filed her complaint on March 12, 1983. The last incident of sexual harassment occurred on December 7, 1982, her last day of work, due to illness; however, her last day of sick leave was February 28, 1983, at which time she was notified of her termination. For various equitable reasons, supported by the record, the Commission found the complaint timely filed. The circuit court reversed the Commission's order not only in regard to the substantive issues in the complaint, but also on this procedural issue. Subsequent to the circuit court's decision, we acknowledged the doctrine of equitable estoppel in regard to the filing of complaints before the Commission, in syllabus points 1 and 2 of *Independent Fire Co. No. 1 v. West Virginia Human Rights Commission*, 180 W.Va. 406, 376 S.E.2d 612 (1988). Therefore, the ruling of the circuit court that the complaint

was untimely filed is reversed and the ruling of the Commission is reinstated.

Ms. Boone's complaint also contained a second allegation. She alleged that her 1983 layoff was the result of either her gender, a handicap or perceived handicap (due to the 1982–83 illness). *See Chico Dairy Co. v. West Virginia Human Rights Commission*, 181 W.Va. 238, 382 S.E.2d 75 (1989), *opinion as modified on denial of rehearing*. The Commission found that the complainant did not make a prima facie case for a discriminatory layoff for any of the above reasons. The circuit court affirmed. We also affirm. There was substantial evidence in the record to support the Commission's finding that due to an economic downturn in the coal industry, Westmoreland began laying off employees in the later 1970's. Appellant's position had

$15,000 damages for the sexual harassment allegation.

After hearings were conducted, the hearing examiner issued a 70–page proposed order, which the Commission adopted.

First, noting that credibility of the witnesses was paramount, the Commission found the appellant was sexually harassed on several occasions during the 1980–82 period. The appellant, married with four children, testified in great detail about several incidents of sexual harassment by her foreman. He frequently made lewd, suggestive comments to the complainant and pinched the complainant's breasts. She admitted that on one occasion she agreed to engage in sexual intercourse with him at the job site because he had explicitly threatened her job.[2] Appellant further testified that she had reported these incidents to her superiors, to no avail. Several current male employees of Westmoreland testified that they worked with Ms. Boone and observed that the shift foreman frequently placed Ms. Boone in situations where the two were alone and isolated.

The foreman in question denied the allegations and testified that the appellant was often sexually suggestive. Most of her other supervisors denied that the complainant reported the incidents. However, one supervisor testified that the complainant reported to him that she and the foreman in question were "having an affair" and that he did not take the information seriously. The Commission found that the foreman in question sexually harassed the complainant by requiring sexual favors as a "quid pro quo" for employment benefits.[3]

As part of its cease and desist order, the Commission awarded the complainant $75,-000 for "harassment, emotional and mental distress, and loss of personal dignity," associated with the sexual harassment allega-

---

survived several layoffs prior to 1982 when the position of airways examiner was eliminated and those capable of performing the job of airways examiner, as well as production foreman, were retained. Appellant did not have the experience or qualifications to perform the additional duties of production foreman. *W.Va. Code,* 5–11–9(a) [1981, 1989] requires the complainant to establish that he or she is "able and competent to perform the services required[.]" *See* syl. pt. 2, *Mingo County Equal Opportunity Council v. State Human Rights Commission,* 180 W.Va. 240, 376 S.E.2d 134 (1988).

**2.** The complainant testified that her shift foreman said "he'd like to do it to me now" and that he graphically detailed the manner in which he wanted to have sexual relations with her. When she refused, he told her, "you know, I could get you fired."

She finally agreed to have sex with him at a job site. "I felt pushed to the point, well, this will get him off my back, yes, I did submit. I won't say I submitted, because I didn't participate, I just laid there."

**3.** There are two recognized forms of sexual harassment in the workplace. The first form of sexual harassment involves an employee who is consistently subjected to sexual innuendo or contact, thereby creating a hostile environment for employment. The second form of sexual harassment involves an employer or agent of the employer demanding sexual consideration in exchange for job benefits, so-called "quid pro quo" harassment. For either type of sexual harassment to be actionable, the harassment must be sufficiently severe or pervasive. *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 66–67, 106 S.Ct. 2399, 2405–06, 91 L.Ed.2d 49, 59–60 (1986).

In *Meritor,* the complainant engaged in sexual intercourse over forty times with her supervisor during a several year period. The supervisor also frequently engaged in lewd behavior while at the workplace. The majority of the court believed it was unclear as to whether the case was treated as a hostile environment claim or a "quid pro quo" claim and, therefore, declined to address employer liability in hostile environment cases. However, employers are strictly liable when a supervisor or agent of the employer engages in "quid pro quo" harassment. "[E]very Court of Appeals that has considered the issue has held that sexual harassment by supervisory personnel is automatically imputed to the employer when the harassment results in tangible job detriment to the subordinate employee." *Meritor,* 477 U.S. at 76, 106 S.Ct. at 2410, 91 L.Ed.2d at 65 (Marshall, J., concurring, joined by Justices Brennan, Blackmun and Stevens). *See also* Equal Opportunity Commission's "Guidelines on Discrimination Because of Sex," 29 *C.F.R.* 1604.11(c) (1988):

(c) Applying general Title VII principles, an employer ... is responsible for its acts and those of its agents and supervisory employees with respect to sexual harassment regardless of whether the specific acts complained of were authorized or even forbidden by the employer and regardless of whether the employer knew or should have known of their occurrence.

tion. *See* syl., *State Human Rights Commission v. Pearlman Realty Agency*, 161 W.Va. 1, 239 S.E.2d 145 (1977). The Commission also included in the cease and desist order a requirement that Westmoreland instruct all employees on sexual harassment in the workplace, and report to the Commission within six months concerning the progress with the instructional programs. The Commission also awarded the complainant attorney's fees in the amount of $7,215.22 for the attorney's work in the entire action. *See supra* note 1 and syl. pt. 4, *Bishop Coal Co. v. Salyers*, 181 W.Va. 71, 380 S.E.2d 238 (1989).

Both parties appealed to the Circuit Court of Nicholas County pursuant to former *W.Va.Code*, 5–11–11 [1967]. *See W.Va.Code*, 5–11–11 [1989] (for current appellate procedure in human rights cases).

The circuit court reversed the Commission in regard to the sexual harassment holding, and, therefore, denied all relief.

The reasoning for the reversal of the sexual harassment allegation was contained in a memorandum of opinion where the circuit court wrote:

> I am of the opinion, that even if the Appellee engaged in sexual activity with those persons accused by her, and which activity they denied, it was not because of her fear of discrimination but voluntarily and consentual [sic] on her actions over the long period of time. It would appear to this reviewing Court from the testimony of the Appellee herself, if the sexual activity did in fact occur, she was not the virtuous person claimed to be and not without fault. Based upon what I consider to be the weight of the credible evidence presented, I am of the opinion one cannot be a little pregnant; they are either pregnant or not pregnant and by analogy either virtuous or not virtuous.

## II

*W.Va.Code*, 5–11–9(a) [1981, 1989] declares that it is unlawful "[f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment[.]" This section of the State Human Rights Act is identical to its federal counterpart, 42 *U.S.C.* § 2000e–2(a)(1) (1982). The United States Supreme Court recognizes that sexual harassment, at the workplace, is an invidious form of discrimination that effects the "terms and conditions of employment" under Title VII. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 64–67, 106 S.Ct. 2399, 2404–06, 91 L.Ed.2d 49, 58–59 (1986).[4]

In *Meritor*, the court relied extensively upon the federal *interpretative* regulations for sexual harassment in the workplace,[5] and the seminal eleventh circuit decision, *Henson v. City of Dundee*, 682 F.2d 897 (11th Cir.1982). *Accord, Katz v. Dole*, 709 F.2d 251 (4th Cir.1983). The *Meritor* court articulated the appropriate standard for proof of sexual harassment claims. Consistent with our reasoning in *Shepherdstown Volunteer Fire Dept. v. State ex rel. State Human Rights Commission*, 172 W.Va. 627, 309 S.E.2d 342 (1983), and *State ex rel. State Human Rights Commission v. Logan–Mingo Area Mental Health Agency, Inc.*, 174 W.Va. 711, 329 S.E.2d 77 (1985), we adopt the federal definition of "quid pro quo" sexual harassment in the workplace and the federal standard of proof in such matters as articulated in *Meritor* and *Henson*.

In order to prove "quid pro quo" sexual harassment, the complainant must prove: (1) that the complainant belongs to a protected class; (2) that the complainant was subject to an unwelcome sexual advance by an employer, or an agent of the employer who appears to have the authority to influence vital job decisions; and (3)

---

4. *But see Patterson v. McLean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), where it was held that racial (or sexual) harassment is not actionable under 42 *U.S.C.* § 1981, which is restricted to the making and enforcement of contracts, but is actionable under Title VII.

5. *See* Equal Employment Opportunity Commission's "Guidelines on Discrimination Because of Sex," 29 *C.F.R.* § 1604.11(a) (1988).

the complainant's reaction to the advancement was expressly or impliedly linked by the employer or the employer's agent to tangible aspects of employment.

■ "[T]he fact that sex-related conduct was 'voluntary,' in the sense that the complainant was not forced to participate against her will, is not a defense to a sexual harassment suit[.]" *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 68, 106 S.Ct. 2399, 2406, 91 L.Ed.2d 49, 60 (1986).[6]

In this case, the hearing examiner and the Commission found that the complainant made a prima facie case for a "quid pro quo" sexual harassment claim.

■ The circuit court reversed this finding because it found that the sexual advances were not "unwelcome" because the complainant "voluntarily" agreed to her foreman's demands.

' "West Virginia Human Rights Commission's findings of fact should be sustained by reviewing courts if they are supported by substantial evidence or are unchallenged by the parties." Syl. pt. 1, *West Virginia Human Rights Commission v. United Transportation Union, Local 655*, [167] W.Va. [282], 280 S.E.2d 653 (1981).' Syl. pt. 4, *State [ex rel. State Human Rights Commission] v. Logan–Mingo Area Mental Health [Agency, Inc.]*, 174 W.Va. [711], 329 S.E.2d 77 (1985).

Syl. pt. 1, *Bishop Coal Co. v. Salyers*, 181 W.Va. 71, 380 S.E.2d 238 (1989).

■ The decision of the circuit court is based upon a misapprehension of the law

regarding sexual harassment in the workplace. It is also based upon a reviewing court's improperly substituting its judgment for that of the hearing examiner and the Commission on a factual determination. The examiner heard the evidence, noted in the order that the finding of "quid pro quo" sexual harassment turned upon the credibility of the witnesses, and found the appellant's self-deprecating, detailed account of events credible. The Commission's decision regarding sexual harassment was supported by substantial evidence; therefore, we reverse the order of the circuit court and reinstate the decision of the Commission that the complainant was sexually harassed, but not discriminatorily discharged.

In regard to the $75,000 damage award which Westmoreland Coal appealed to the circuit court, it raised both the complainant's failure to prove damages and the Commission's authority to award more than "incidental" damages. These same issues have been raised before this Court. We remand the case to the Commission with directions to fashion an order consistent with syllabus point 2 of *Bishop Coal Co. v. Salyers*, 181 W.Va. 71, 380 S.E.2d 238 (1989). The award of attorney's fees should be consistent with syllabus point 4 of *Bishop Coal, supra*.

Based upon the foregoing, the order of the Circuit Court of Nicholas County is reversed, and the decision of the West Virginia Human Rights Commission that the complainant was sexually harassed but not discriminatorily discharged is reinstated;

---

**6.** In order to be sexually harassed, the complainant must be subjected to "unwelcome" sexual advances. 29 *C.F.R.* § 1604.11(a) (1988). In *Meritor*, the court noted that this is a *factual* determination, based upon the totality of the circumstances. *Meritor*, 477 U.S. at 68–69, 106 S.Ct. at 2406–07, 91 L.Ed.2d at 60–61. Further, the court in *Meritor*, though refusing a *per se* rule against admissibility of the complainant's sexual behavior, noted that the forum of first instance should decide the admissibility of complainant's sexual conduct by using a balancing test weighing relevancy against unfair prejudice. 477 U.S. at 69, 106 S.Ct. at 2407, 91 L.Ed.2d at 61. *See Priest v. Rotary*, 98 F.R.D. 755, 761 (N.D.Cal.1983) (using an analysis similar to that employed in a criminal "rape shield" statute, the

court refused to compel discovery regarding alleged acts of prostitution by the complainant because "discovery tactics such as that used by defendant herein might intimidate, inhibit, or discourage Title VII plaintiffs.... Without such protection ... employees whose intimate lives are unjustifiably and offensively intruded upon in the workplace might face the 'Catch-22' of invoking their statutory remedy only at the risk of enduring further intrusions into irrelevant details of their personal lives[.]").

In this case, the hearing examiner permitted testimony of the supervisor regarding the complainant's allegedly "provocative" behavior and credited it accordingly. The credibility of the witnesses was for the hearing examiner to determine.

the case is remanded to the Commission for a determination of the proper amount, if any, of monetary damages, and the proper amount of attorney's fees.

Affirmed in part; Reversed in part and Remanded.

McGRAW, J., participated and concurred in this decision but departed from the Court prior to the preparation of the opinion.

WORKMAN J., did not participate in the consideration or decision of this case.