# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

JEREMIAH L. JONES,
**Plaintiff Below, Petitioner**

**v.) No. 23-ICA-540** (Cir. Ct. Harrison Cnty. Case No. CC-17-2023-C-75)

**TOWN OF LUMBERPORT, WEST VIRGINIA,**
**a political subdivision of West Virginia,**
**Defendant Below, Respondent**

**FILED**

**December 23, 2024**

released at 3:00 p.m.
ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

In this appeal, Petitioner Jeremiah Jones ("Mr. Jones") argues that his former employer, Respondent, Town of Lumberport, West Virginia ("Lumberport"), violated the West Virginia Human Rights Act ("WVHRA") by discriminating against him because of his sexual orientation. On November 3, 2023, the Circuit Court of Harrison County dismissed Mr. Jones' WVHRA claims, finding that the WVHRA does not prohibit discrimination based on sexual orientation. On appeal, Lumberport filed a brief in support of the circuit court's order.[1] Mr. Jones filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Jones was an employee in Lumberport's Public Works Department from April 6, 2021, until May 10, 2021.[2] Mr. Jones is married to Mr. Jackie Leonard, who was also an employee of Lumberport. While working for Lumberport, Mr. Jones perceived that his

---

[1] Mr. Jones is represented by Cory B. Lowe, Esq., Todd S. Bailess, Esq., Jodi R. Durham, Esq., Samuel D. Madia, Esq., and Jonathan Wesley Prince, Esq. Lumberport is represented by Nathaniel D. Griffith, Esq., and Tiffany R. Durst, Esq.

[2] The factual background is based on the allegations in Mr. Jones' First Amended Complaint. As Mr. Jones' claims were dismissed for failure to state a claim under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure, the allegations in his complaint are taken as true. *See* Syl. Pt. 1, *Wiggins v. E. Associated Coal Corp.*, 178 W. Va. 63, 357 S.E.2d 745 (1987).

direct supervisor and co-workers treated him differently because he is homosexual, including ignoring him and shunning him from daily meetings. Mr. Jones complained to the mayor of Lumberport about the offensive actions of his supervisor and co-workers.

Mr. Jones and Mr. Leonard met with the mayor about these complaints, and a town council member joined the meeting by phone. After the mayor recited Mr. Jones' complaints, the town council member responded, while on speakerphone, "that faggot, you need to tell that boy to grow up and be a man." The mayor, the mayor's administrative assistant, and the town council member subsequently visited the Lumberport Public Works office to meet with Mr. Jones' co-workers about the complaints. Upon being informed of Mr. Jones' complaints, his co-workers responded by making complaints about Mr. Jones and Mr. Leonard.

Mr. Jones' direct supervisor was suspended pending investigation, but the town council member was not disciplined. Mr. Jones informed the mayor that he did not feel comfortable returning to work until the investigation into his supervisor was complete and until he was assured that he would be returning to a non-discriminatory work environment. The mayor did not provide any such assurances, so Mr. Jones did not return to work. Mr. Jones perceived the end of his employment with Lumberport as a constructive discharge.

Mr. Jones filed the underlying lawsuit against Lumberport on April 7, 2023, and filed an amended complaint on July 19, 2023, asserting the following claims: (I) Sex Discrimination/Hostile Work Environment under the WVHRA; (II) Harassment/Embarrassment/Degradation under the WVHRA; (III) Retaliation under the WVHRA; (IV) Violation of the West Virginia Whistleblower Law; (V) Common Law Retaliatory Discharge; and (VI) Constructive Discharge. Each of Mr. Jones' three WVHRA claims stems from allegations that Lumberport discriminated against him because of his sexual orientation. Lumberport filed a motion to dismiss Mr. Jones' three WVHRA claims (Counts I, II, and III in his amended compliant) for failure to state a claim under Rule 12(b)(6) of the West Virginia Rules of Civil Procedure. Lumberport argued that Mr. Jones' WVHRA claims fail as a matter of law because sexual orientation is not a protected class. Mr. Jones filed a response in opposition, arguing that discrimination based on sexual orientation constitutes discrimination based on sex under the WVHRA.

The circuit court held a hearing on Lumberport's motion to dismiss on October 4, 2023, and, on November 3, 2023, entered its order granting Lumberport's motion and dismissing Mr. Jones' three WVHRA claims. The court found that the relevant statutory language of the WVHRA was unambiguous, that sexual orientation is not included as a protected class within the WVHRA, and that the WVHRA's prohibition on discrimination because of sex does not prohibit discrimination because of an individual's sexual orientation. The court also noted that a bill was introduced into the West Virginia Senate in 2022 proposing to amend the WVHRA to add sexual orientation as a protected class, but that bill did not advance and the WVHRA was not amended. The court reasoned that

such action confirmed the intent of the West Virginia Legislature not to include "sexual orientation" in the WVHRA as a protected class. It is from the circuit court's order dismissing Mr. Jones' WVHRA claims that he now appeals.[3]

Our review of an order granting a motion to dismiss is *de novo*. Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995) ("Appellate review of a circuit court's order granting a motion to dismiss . . . is *de novo*."); *Folse v. Rollyson*, 249 W. Va. 389, 393, 895 S.E.2d 244, 248 (Ct. App. 2023) ("When reviewing a circuit court's order granting a motion to dismiss, this Court applies a *de novo* standard of review." (citations omitted)). Further, our review of this matter is guided by the SCAWV's recognition, in syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995), that "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."

On appeal, Mr. Jones argues that the circuit court erred in finding that the WVHRA's prohibition on discrimination in employment because of an individual's sex does not bar discrimination based on a person's sexual orientation. Although Mr. Jones asserts two assignments of error, he essentially makes one argument: that this Court should follow the United States Supreme Court's decision in *Bostock v. Clayton County, Georgia*, 590 U.S. 644 (2020) in this Court's interpretation of the WVHRA. In *Bostock*, the Supreme Court found that Title VII of the Civil Rights Act of 1964 ("Title VII"), as codified by 42 U.S.C. § 2000e-2 (1991), prohibits employment discrimination because of an individual's sexual orientation. *See Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 659 (2020). The Supreme Court concluded that Title VII's prohibition on discrimination because of sex necessarily prohibits discrimination based on an individual's sexual orientation. *Id.* at 661-62.

---

[3] We specifically note that the November 3, 2023, order on appeal, does not fully resolve the underlying case, and only addresses Mr. Jones' claims under the WVHRA. Further, we find no issue with the fact that the November 3, 2023, order was not expressly certified as a final order, pursuant to Rule 54(b) of the Rules of Appellate Procedure. The Supreme Court of Appeals of West Virginia ("SCAWV") has held that the absence of an express Rule 54(b) certification "will not render the order interlocutory and bar appeal provided that this Court can determine from the order that the trial court's ruling approximates a final order in its nature and effect." Syl. Pt. 2, in part, *Durm v. Heck's, Inc.*, 184 W. Va. 562, 401 S.E.2d 908 (1991); Syl. Pt. 1, *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995) (extending *Durm* to orders granting a motion to dismiss under Rule 12(b)(6). In the order on appeal, the circuit court dismissed all of Mr. Jones' claims under the WVHRA, thus resolving the case as to those claims. Accordingly, we find that the circuit court's November 3, 2023, order approximates a final order in nature and effect. Therefore, this Court has jurisdiction over this appeal under West Virginia Code § 51-11-4(b)(1).

At the outset, the parties dispute how this Court should begin its statutory analysis. Pointing to *Bostock*, Mr. Jones argues that this Court should follow the SCAWV's general practice of "look[ing] to federal discrimination law dealing with Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to e–17 (1994) when interpreting provisions of our state's human rights statutes." *W. Va. Hum. Rts. Comm'n v. Wilson Ests., Inc.*, 202 W. Va. 152, 158, 503 S.E.2d 6, 12 (1998). Conversely, Lumberport argues that, if the Court finds that the relevant statutory language is plain and unambiguous, the Court can simply apply the language. We agree with Lumberport.

"The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature." Syl. Pt. 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953). The SCAWV has long held that "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 3, *In re I.S.A.*, 244 W. Va. 162, 852 S.E.2d 229 (2020) (quoting Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951)).

The relevant portions of the WVHRA provide that "[i]t shall be an unlawful discriminatory practice . . . [f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required[.]" W. Va. Code § 5-11-9(1) (2016). Under the WVHRA, "[t]he term 'discriminate' or 'discrimination' means to exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, age, blindness, disability or familial status and includes to separate or segregate[.]" W. Va. Code § 5-11-3(h) (1998).[4]

Although the WVHRA includes a definitions section, neither "sex" nor "sexual orientation" is defined. *See* W. Va. Code § 5-11-3 (1998). The SCAWV has determined that "[u]ndefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning." Syl. Pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W. Va. 525, 336 S.E.2d 171 (1984). Affording the undefined term "sex" its common and ordinary meaning, below, we find the word to be clear and unambiguous and to have a very different meaning than the term "sexual orientation."

In 1971, the West Virginia Legislature amended the WVHRA to bar employers from discriminating because of sex. At that time, Webster defined "sex" as "one of the two divisions of organic esp. human beings respectively designated male or female." Webster's Third New International Dictionary (1970). The Oxford English Dictionary defined "sex" as "[t]he sum of those differences in the structure and function of the reproductive organs

---

[4] Effective February 8, 2024, the WVHRA was repealed and reenacted as West Virginia Code §§ 16B-17-1 to -20. However, all references herein are to the former codification as it was in effect during the proceedings below.

on the ground of which beings are distinguished as male and female, and of the other physiological differences consequent on these." The Oxford English Dictionary 578 (1961). Black's Law Dictionary defined "sex" as "[t]he sum of the peculiarities of structure and function that distinguish a male from a female organism; the character of being male or female." Sex, Black's Law Dictionary (Rev. 4th ed. 1968).[5]

In contrast, Black's Law Dictionary defines "sexual orientation" as "[a] person's predisposition or inclination toward sexual activity or behavior with other males or females; heterosexuality, homosexuality, or bisexuality." Sexual Orientation, Black's Law Dictionary (11th ed. 2019). Similarly, the New Oxford American Dictionary defines "sexual orientation" as "a person's sexual identity in relation to the gender to which they are attracted; the fact of being heterosexual, homosexual, or bisexual." New Oxford American Dictionary (3d ed. 2010).[6]

These common definitions demonstrate that "sex" clearly refers to being male or female and does not include the distinct concept of "sexual orientation." *See State v. Butler*, 239 W. Va. 168, 174-78, 799 S.E.2d 718, 724-28 (2017) (applying similar analysis to a criminal statute prohibiting violations of civil rights and concluding that the word "sex" was unambiguous and did not encompass "sexual orientation"). It is not this Court's role to read language into a statute. *See Banker v. Banker*, 196 W. Va. 535, 547, 474 S.E.2d 465, 477 (1996) (citing *Bullman v. D & R Lumber Company*, 195 W.Va. 129, 464 S.E.2d 771 (1995)) ("Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes something the Legislature purposely omitted."). Accordingly, we find that it is unambiguous that the statutory language in the WVHRA prohibiting employment discrimination because of "sex" does not prohibit discrimination based on "sexual orientation."

Mr. Jones suggests that this Court should expand the WVHRA's definition of "sex" to encompass "sexual orientation" in light of the West Virginia Legislature's mandate that "[t]he provisions of [the WVHRA] shall be liberally construed to accomplish its objectives and purposes." W. Va. Code § 5-11-15 (1967). However, the SCAWV has explained that this provision has no application where the relevant statutory language is plain and

---

[5] Although we cite definitions from dictionaries roughly contemporaneous to the addition of "sex" to the WVHRA, reliance on modern dictionaries would not change the result. *See* Sex, Black's Law Dictionary (11th ed. 2019) ("The sum of the peculiarities of structure and function that distinguish a male from a female organism; gender"); Webster's New World College Dictionary (5th ed. 2016) (defining "sex" as "either of the two divisions, male or female, into which persons, animals, or plants are divided, with reference to their reproductive functions").

[6] It appears that most dictionaries published around the time "sex" was added as a protected class in the WVHRA did not include a definition of "sexual orientation."

unambiguous. *See Pajak v. Under Armour, Inc.*, 246 W. Va. 387, 395, 873 S.E.2d 918, 926 (2022) (finding that, because the language at issue was plain, "we need not resort to a liberal construction of the WVHRA"). Indeed, the SCAWV recently relied on a plain language analysis in rejecting an argument that the term "ancestry" in the WVHRA encompasses the concept of "familial status." *See Keener v. Clay Cnty. Dev. Corp.*, 247 W. Va. 341, 350, 880 S.E.2d 63, 72 (2022).

In his reply, Mr. Jones argues that this Court must look to *Bostock*'s interpretation of Title VII even if it finds the relevant language of the WVHRA to be unambiguous. Mr. Jones relies heavily on past instances in which the SCAWV has applied the WVHRA's language prohibiting employment discrimination because of sex consistently with federal interpretations of Title VII. *See Willis v. Wal-Mart Stores, Inc.*, 202 W. Va. 413, 417, 504 S.E.2d 648, 652 (1998) (finding that the WVHRA prohibits same-sex sexual harassment); *Frank's Shoe Store v. W. Va. Hum. Rts. Comm'n*, 179 W. Va. 53, 59, 365 S.E.2d 251, 257 (1986) (finding that the WVHRA prohibits employment discrimination against pregnant women). We disagree and find the cases cited by Mr. Jones in this vein to be inapposite, as the SCAWV did not engage in a plain language analysis in either case. Notably, Mr. Jones fails to identify a single instance in which the SCAWV explicitly found a provision of the WVHRA to be plain and unambiguous and then relied on federal interpretations of analogous Title VII language to reach a contrary interpretation.

However, even assuming federal caselaw interpreting Title VII is relevant in applying an unambiguous section of the WVHRA, it would not change this Court's conclusion. The SCAWV has explained that "we will construe the Human Rights Act to coincide with the prevailing federal application of Title VII unless there are variations in the statutory language that call for divergent applications or there are some other compelling reasons justifying a different result." *Hanlon v. Chambers*, 195 W. Va. 99, 112, 464 S.E.2d 741, 754 (1995); *see also Stone v. St. Joseph's Hosp. of Parkersburg*, 208 W. Va. 91, 106, 538 S.E.2d 389, 404 (2000) (recognizing that the WVHRA is an "independent approach" that "is not mechanically tied to federal disability discrimination jurisprudence"). Here, even if we consider *Bostock* and its progeny, our conclusion that the word "sex" in the WVHRA plainly does not encompass "sexual orientation" is a compelling reason to justify a different result than that reached in *Bostock*.[7]

---

[7] Several other state appellate courts have declined to follow *Bostock* when applying their states' anti-discrimination laws. *See Gauthreaux v. City of Gretna*, 360 So.3d 930, 935-36 (La. 2023) ("[W]e decline to extend *Bostock's* reasoning to La. R.S. 23:332 to find that it allows for protection from employment discrimination because of a person's sexual orientation."); *Doe v. Cath. Relief Servs.*, 300 A.3d 116, 125-28 (Md. 2023) (applying a plain language analysis to the Maryland Fair Employment Practices Act, which includes protections for "sex" and "sexual orientation," and declining to follow *Bostock*'s reasoning that "sex" encompasses "sexual orientation"); *see also Vroegh v. Iowa Dep't of Corr.*, 972 N.W.2d 686, 702 (Iowa 2022) (declining to follow *Bostock*'s reasoning and finding that

We also find that the repeated failure of proposed amendments in the West Virginia Legislature adding "sexual orientation" as a protected class to the WVHRA requires this Court to find in favor of Lumberport. The SCAWV has cautioned against assigning substantial weight to post-enactment legislative history. *See Liberty Mut. Ins. Co. v. Morrisey*, 236 W. Va. 615, 623 n.4, 760 S.E.2d 863, 871 n.4 (2014) (per curiam) (citing *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 587 n.16, 466 S.E.2d 424, 438 n.16 (1995)). However, in *Butler* the SCAWV found that the Legislature's "repeated refusal to amend" a statute to include certain language is "undoubtedly indicative of its intent not to include" that language. *Butler*, 239 W. Va. at 175, 799 S.E.2d at 725. Although the circuit court focused on the recent failure of Senate Bill 156 in the 2022 Regular Legislative Session of the West Virginia Legislature, we recognize that there have been over fifty failed attempts to amend the WVHRA to prohibit employment discrimination based on an individual's sexual orientation since 1993.[8] The West Virginia

the word "sex" in the Iowa Civil Rights Act does not encompass the concept of "gender identity").

[8] *See* H.B. 4194, 86th Leg. Reg. Sess. (W. Va. 2024); H.B. 2266, 86th Leg. Reg. Sess. (W. Va. 2023); S.B. 696, 86th Leg. Reg. Sess. (W. Va. 2023); S.B. 156, 85th Leg. Reg. Sess. (W. Va. 2022); H.B. 2538, 85th Leg. Reg. Sess. (W. Va. 2021); H.B. 2697, 85th Leg. Reg. Sess. (W. Va. 2021); S.B. 252, 85th Leg. Reg. Sess. (W. Va. 2021); S.B. 692, 85th Leg. Reg. Sess. (W. Va. 2021); H.B. 4200, 84th Leg. Reg. Sess. (W. Va. 2020); H.B. 4201, 84th Leg. Reg. Sess. (W. Va. 2020); H.B. 4948, 84th Leg. Reg. Sess. (W. Va. 2020); S.B. 211, 84th Leg. Reg. Sess. (W. Va. 2020); S.B. 270, 84th Leg. Reg. Sess. (W. Va. 2020); H.B. 2078, 84th Leg. Reg. Sess. (W. Va. 2019); H.B. 2349, 84th Leg. Reg. Sess. (W. Va. 2019); H.B. 2741, 84th Leg. Reg. Sess. (W. Va. 2019); H.B. 2763, 84th Leg. Reg. Sess. (W. Va. 2019); S.B. 116, 84th Leg. Reg. Sess. (W. Va. 2019); S.B. 137, 84th Leg. Reg. Sess. (W. Va. 2019); S.B. 391, 84th Leg. Reg. Sess. (W. Va. 2019); H.B. 4319, 83rd Leg. Reg. Sess. (W. Va. 2018); S.B. 99, 83rd Leg. Reg. Sess. (W. Va. 2018); S.B. 471, 83rd Leg. Reg. Sess. (W. Va. 2018); H.B. 2529, 83rd Leg. Reg. Sess. (W. Va. 2017); H.B. 2623, 83rd Leg. Reg. Sess. (W. Va. 2017); S.B. 77, 83rd Leg. Reg. Sess. (W. Va. 2017); H.B. 4404, 82nd Leg. Reg. Sess. (W. Va. 2016); S.B. 518, 82nd Leg. Reg. Sess. (W. Va. 2016); H.B. 2534, 82nd Leg. Reg. Sess. (W. Va. 2015); H.B. 2856, 81st Leg. Reg. Sess. (W. Va. 2013); S.B. 486, 81st Leg. Reg. Sess. (W. Va. 2013); S.B. 14, 80th Leg. Reg. Sess. (W. Va. 2012); H.B. 2045, 80th Leg. Reg. Sess. (W. Va. 2011); S.B. 226, 80th Leg. Reg. Sess. (W. Va. 2011); S.B. 154, 79th Leg. Reg. Sess. (W. Va. 2010); H.B. 2454, 79th Leg. Reg. Sess. (W. Va. 2009); H.B. 2925, 79th Leg. Reg. Sess. (W. Va. 2009); H.B. 2954, 79th Leg. Reg. Sess. (W. Va. 2009); S.B. 134, 79th Leg. Reg. Sess. (W. Va. 2009); S.B 238, 79th Leg. Reg. Sess. (W. Va. 2009); H.B. 2860, 78th Leg. Reg. Sess. (W. Va. 2008); H.B. 3211, 78th Leg. Reg. Sess. (W. Va. 2008); H.B. 4164, 78th Leg. Reg. Sess. (W. Va. 2008); S.B. 600, 78th Leg. Reg. Sess. (W. Va. 2008); S.B. 608, 78th Leg. Reg. Sess. (W. Va. 2008); H.B. 2470, 77th Leg. Reg. Sess. (W. Va. 2005); H.B. 3148, 76th Leg. Reg. Sess. (W. Va. 2003); H.B. 2505, 73rd Leg. Reg. Sess. (W. Va. 1997); S.B. 369, 73rd Leg. Reg.

Legislature's repeated choice not to amend the WVHRA indicates its intent not to add "sexual orientation" as a protected class.[9] To the extent that this result may seem inequitable or fundamentally unfair, we remind the parties that the West Virginia Legislature is the proper place to address public policy concerns. *See* Syl. Pt. 2, *Huffman v. Goals Coal Co.*, 223 W. Va. 724, 679 S.E.2d 323 (2009).

Lastly, we highlight that this decision does not leave Mr. Jones without a remedy against Lumberport for the alleged conduct of its employees. Mr. Jones' claims for violation of the West Virginia Whistleblower Law, common law retaliatory discharge, and constructive discharge remain pending before the circuit court.

For the foregoing reasons, we affirm the Circuit Court of Harrison County's November 3, 2023, order granting Lumberport's motion to dismiss Mr. Jones' WVHRA claims.

Affirmed.

---

Sess. (W. Va. 1997); H.B. 4707, 72nd Leg. Reg. Sess. (W. Va. 1996); H.B. 2449, 71st Leg. Reg. Sess. (W. Va. 1993); S.B. 320, 71st Leg. Reg. Sess. (W. Va. 1993).

[9]As reasoned by Justice Wooton in his concurring opinion in *Progressive Max Insurance Company v. Brehm*, to the extent that this Court's ruling may seem inequitable or fundamentally unfair, the SCAWV has consistently noted that:

> [t]his Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation. It is the duty of the Legislature to consider facts, establish policy, and embody that policy in legislation. It is the duty of this Court to enforce legislation unless it runs afoul of the State or Federal *Constitutions*.

246 W. Va. 328, 335-36, 873 S.E.2d 859, 866-67 (2022) (Wooton, J., concurring) (quoting Syl. Pt. 2, *Huffman v. Goals Coal Co.*, 223 W. Va. 724, 679 S.E.2d 323 (2009)); *accord Lewis v. Canaan Valley Resorts, Inc.*, 185 W. Va. 684, 692, 408 S.E.2d 634, 642 (1991) ("[T]he judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines."); Syl. Pt. 1, in part, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W. Va. 740, 143 S.E.2d 351 (1965) ("Courts are not concerned with questions relating to legislative policy. The general powers of the legislature, within constitutional limits, are almost plenary.") As such, the remedy for Mr. Jones' alleged inequity lies not with this Court, but with the West Virginia Legislature.

8

**ISSUED:** December 23, 2024

**CONCURRED IN BY:**

Judge Charles O. Lorensen
Judge Daniel W. Greear

**DISSENTING:**

Chief Judge Thomas E. Scarr


SCARR, CHIEF JUDGE, dissenting:

When you ask the wrong question, you get the wrong answer. In this case, the question is not whether "sex" and "sexual orientation" mean the same thing. They do not and never have. The question is whether treating employees differently because of their sexual orientation constitutes discrimination "because of… sex" for purposes of the West Virginia Human Rights Act ("WVHRA" or "the Act"). That was the question posed by Mr. Jones, but the majority ignored his question and reframed the issue to reach the desired result. The answer to the question fashioned by the majority compels me to dissent from the majority opinion. As discussed below, it is impossible to discriminate against someone because of their sexual orientation without discriminating against them because of their sex because these concepts are inseparably related. It is simply not possible to define or consider a person's sexual orientation without considering his or her sex. As the court observed in *Hively v. Ivy Tech Comty. Coll.*, 853 F.3d 339, 350 (7th Cir. 2017), "[i]t would require considerable calisthenics to remove the 'sex' from 'sexual orientation.'"


**A. The WVHRA**

Under the WVHRA, it is "an unlawful discriminatory practice… [f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required[.]" W. Va. Code § 5-11-9(1) (2016).[10] The WVHRA defines "discrimination" as "to exclude from, or fail or refuse to extend to, a person equal opportunities because of race, religion, color, national origin, ancestry, sex, age, blindness,

---

[10] This section is now codified at W. Va. Code § 16B-17-9(1) (2024)

disability or familial status and includes to separate or segregate [.]" W. Va. Code § 5-11-3(h).[11]

By its own terms, this Act "shall be liberally construed to accomplish its objectives and purposes." W. Va. Code § 5-11-15; [12] Syl. Pt. 1, *Paxton v. Crabtree*, 184 W. Va. 237, 400 S.E.2d 245 (1990). "Accordingly, [the Supreme Court of Appeals of West Virginia] has consistently interpreted the West Virginia Human Rights Act broadly," *Shepherdstown Volunteer Fire Dept. v. State ex rel. W. Va. Hum. Rts. Comm'n,* 172 W. Va. 627, 633, 309 S.E.2d 342, 348 (1983), and over time, the court has applied the Act to more examples of sex discrimination. *See*, *e.g*., Syl. Pt. 2, *Frank's Shoe Store v. W. Va. Hum. Rts. Comm'n*, 179 W. Va. 53, 365 S.E.2d 251 (1986) (pregnancy); Syl. Pt. 1, *Westmoreland Coal Co. v. W. Va. Hum. Rts. Comm'n*, 181 W. Va. 368, 382 S.E.2d 562 (1989) ("quid pro quo" sexual harassment); Syl. Pt. 9, *Hanlon v. Chambers*, 195 W. Va. 99, 464 S.E.2d 741 (1995) (recognizing cause of action under Human Rights Act for hostile work environment where supervisory employees have been sexually harassed by subordinate employees); Syl. Pt. 1, *Willis v. Wal-Mart Stores, Inc*., 202 W. Va. 413, 504 S.E.2d 648 (1998) (recognizing cause of action for "discrimination based upon same-gender sexual harassment"); Syl. Pt. 8, *Conrad v. ARA Szabo*, 198 W. Va. 362, 480 S.E.2d 801 (1996) (sexual harassment of non-employee).

**B.   "Because of … Sex"**

In this case, the question is not what is the common, ordinary, and accepted meaning of "sex." Instead, it is what is the common, ordinary, and accepted meaning of the phrase "because of…sex." *See Bostock v. Clayton Cnty.*, 590 U.S. 644, 787 (2020) (Kavanaugh, J., dissenting) ("Courts must heed the ordinary meaning of the *phrase as a whole*, not just the meaning of the words in the phrase."); *State v. Butler*, 239 W. Va. 168, 180-81, 799 S.E.2d 718, 730-31 (2017) (Workman, J., dissenting) ("This Court is consequently called upon to apply the 'common, ordinary and accepted' meaning of the phrase 'because of…sex.'"). That phrase has a meaning separate and apart from the meaning of its individual component words. *Cf. Yates v. United States*, 574 U.S. 528, 538 (2015) (plurality opinion) ("although dictionary definitions of the words 'tangible' and 'object' bear consideration, they are not dispositive of the meaning of 'tangible object' in § 1519."). In this case, not only has the majority failed to consider the relevant words as a phrase, but it has also focused on a single word, "sex," with no discussion of how that word relates to the rest of the phrase. This is a critical omission, because discrimination may be "because of sex" even if it is not the same as "sex." *See Frank's Shoe Store v. W. Va. Hum. Rts.*

---

[11] This section is now codified at W. Va. Code § 16B-17-3(h) (2024).

[12] This section is now codified at W. Va. Code § 16B-17-15 (2024).

*Comm'n*, 179 W. Va. 53, 59, 365 S.E.2d 251, 256-57 (1986) (discrimination based on pregnancy is "because of sex"). As the Court reasoned in *Bostock*:

> [c]onsider . . . an employer with two employees, both of whom are attracted to men. The two individuals are, to the employer's mind, materially identical in all respects, except that one is a man and the other a woman. If the employer fires the male employee for no reason other than the fact he is attracted to men, the employer discriminates against him for traits or actions it tolerates in his female colleague. Put differently, the employer intentionally singles out an employee to fire based in part on the employee's sex, and the affected employee's sex is a but-for cause of his discharge.

*Bostock*, 590 U.S. at 660. Justice Workman made the same point in her well-reasoned dissent in *State v. Butler:*

> If a woman is denied an employment opportunity because she is a lesbian, has she been discriminated against because of her sex? Yes, but not simply because she possesses female anatomical parts; rather, the actions occurred because she was in a relationship with a woman and "[t]he discriminatory behavior does not exist without taking the victim's biological sex …into account." *Hively v. Ivy Tech Cmty. College of Ind.*, 853 F.3d 339, 346-47 (7th Cir. 2017). "Any discomfort, disapproval, or job decision based on the fact that the complainant—woman or man—dresses differently, speaks differently, or dates or marries a same-sex partner, is a reaction purely and simply based on sex." *Id.* at 347.

*State v. Butler*, 239 W. Va. at 182, 799 S.E.2d at 732.

In prohibiting discrimination "because of …sex," the legislature created a rule broad enough to include discrimination based on sexual orientation. There is no "'canon of donut holes,' in which [the legislature's] failure to speak directly to a specific case that falls within a more general statutory rule creates a tacit exception. Instead, when [the legislature] chose not to include exceptions to a broad rule, courts apply the broad rule." *Bostock v. Clayton Cnty.*, 590 U.S. at 669. "[T]he same judicial humility that requires us to refrain from adding to statutes requires us to refrain from diminishing them." *Id.* at 681. If the legislature had wanted to exclude "sexual orientation" from discrimination "because of sex" it could easily have done so. The fact that the Act contains no language excluding discrimination based on sexual orientation from the general, broad rule prohibiting discrimination because of sex supports the conclusion that sexual orientation discrimination is prohibited by the WVHRA, particularly in light of the stated purpose and

objectives of the WVHRA.[13] *See Bostock*, *id.* at 646-47 ("But when Congress chooses not to include any exceptions to a broad rule, this Court applies the broad rule.").

The majority observes that "most dictionaries published around the time 'sex' was added as a protected class in the WVHRA did not include a definition of 'sexual orientation.'"[14] That may be true, but dictionaries from that time commonly did define the kinds of sexual orientation: heterosexuality, homosexuality, and bisexuality. *See* WEBSTER'S NEW COLLEGIATE DICTIONARY (1974) (emphasis added) "heterosexuality: the manifestation of sexual desire for one or more members of the **opposite sex**"; "homosexuality: the manifestation of sexual desire toward a member of one's **own sex**"; "bisexual: sexually oriented toward **both sexes**". WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1970) (emphasis added) "bisexual: having sexual desire… for members of **both sexes**"; "heterosexuality: the manifestation of sexual desire toward a member of the **opposite sex**"; homosexuality: "atypical sexuality characterized by manifestation of sexual desire toward a member of one's **own sex**". Then, as now, one "cannot [define or] consider a person's [sexual orientation] without also accounting for their sex; doing so would render 'same' and 'own' [and 'both'] meaningless." *Hively v. Ivy Tech Comty Coll. of Indiana*, 853 F.3d 339, 358 (7th Cir. 2017) (Flaum, J., concurring). "As such, discriminating against [an] employee because [he is] homosexual constitutes discriminating . . . because of (A) the employee's sex, *and* (B) [his] sexual attraction to individuals of the *same sex*. And 'sex,' under Title VII [and the WVHRA], is an enumerated trait." *Id.*

The majority reads far too much into the fact that the Act does not specifically and expressly mention "sexual orientation."[15] The Supreme Court of Appeals of West Virginia

---

[13] Similarly, in *Oncale v. Sundowner Offshore Serv.*, 523 U.S. 75 (1998), the court found it significant that Title VII did not contain language excluding same-sex harassment from the protections of that act. As the *Oncale* court observed "nothing in Title VII necessarily bars a claim of discrimination because of…sex" merely because the plaintiff and the defendant…are of the same sex. … We see no justification in the statutory language or our precedents for a categorical rule excluding same-sex harassment claims from the coverage of Title VII." *Id*. at 1001-002.

[14] "Sexual harassment" did not appear in dictionaries of the early 1970s, either, but that term, although distinguishable from "sex," has been included under the "umbrella of sex discrimination," *Hively*, 853 F.3d at 363 n.3, under both Title VII and the WVHRA for many years.

[15] This was properly the beginning of the majority's analysis but should not have been its end. This case presented an important question of first impression which deserved a more detailed and extensive analysis than a summary affirmance in a memorandum

("SCAWV") has previously held that the Act prohibits discrimination based on pregnancy and sexual harassment as forms of sex discrimination even though "pregnancy" and "sexual harassment" are not mentioned in the Act. *See Frank's Shoe Store v. W. Va Hum. Rts. Comm'n*, 179 W. Va. 53, 59, 365 S.E.2d 251, 256-57 (1986) (pregnancy); *Westmoreland Coal Co. v. W. Va. Hum. Rts. Comm'n*, 181 W. Va. 368, 372-73, 382 S.E.2d 562, 566-67 (1989) (sexual harassment). The issue is not whether "sexual orientation" is a protected class under the WVHRA, but whether "sexual orientation" is a form of discrimination based on "sex", which is already recognized as a protected class.

In concluding that the WVHRA does not cover discrimination based on sexual orientation, the circuit court, and to a lesser extent, the majority, relied on *State v. Butler,* 239 W. Va. 168, 799 S.E.2d 718 (2017), a 3-2 decision[16] holding that "sex" in a criminal hate crime statute did not include "sexual orientation." Of course, "the same words, placed in different contexts, sometimes mean different things…. identical language may convey varying content when used in different statutes…." *Yates v. United States*, 574 U.S. 528, 537 (2015) (plurality opinion); *see also FAA v. Cooper*, 566 U.S. 284, 292-93 (2012) ("actual damages" has different meanings in different statutes). *Butler* is readily distinguishable from the present case because it involved a criminal statute, which had to be strictly construed,[17] rather than the WVHRA which must be liberally construed, and should be construed, whenever possible, to mirror Title VII jurisprudence. *See generally Werling v. Sandy*, 476 N.E.2d 1053, 1056 (Ohio 1985) (refusing to apply the definition of "person" in criminal vehicular homicide act to "person" in civil wrongful death statute because "criminal statutes are strictly construed against the state and liberally interpreted in favor of the accused."); *Cf. State v. Dickinson*, 275 N.E.2d 599, 602 (Ohio 1971) ("[T]he definition of a word in a civil statute does not necessarily import the same meaning to the same word in interpreting a criminal statute.").

There is no indication that the hate crime statute in *Butler* was based on another statute whose interpretation was supposed to guide the interpretation of the hate crime statute. Even the majority opinion in *Butler* recognized that "the 'because of sex' analyses employed under remedial discrimination statutes such as Title VII" were "inapplicable" in

_____

opinion because it allegedly involved "no substantial question of law." *See* W. Va. R. App. P. 12(d).

[16] Justices Loughry, Ketchum, and Walker voted to affirm the circuit court in *Butler*, while Justices Workman and Davis dissented.

[17] Under the "rule of lenity," criminal statutes must be narrowly construed. *State v. Butler*, 239 W. Va. 168, 174 n.11, 799 S.E.2d 718, 724 n.11 (2017). This rule ensures "that there is fair warning of the boundaries of criminal conduct." *Id*. (internal quotation marks omitted).

13

analyzing similar language in West Virginia's hate crime statute. *Butler*, 239 W. Va. at 173 n.8, 799 S.E.2d at 723 n.8.[18] Finally, even if the analysis in civil cases involving sexual discrimination might have been relevant to the analysis of the hate crime statute, *Butler* was decided three years before *Bostock*, so the *Butler* court did not have the benefit of the Supreme Court's extensive reasoning and analysis in *Bostock*.

## C. Title VII and the Goal of Uniformity

The SCAWV has repeatedly looked to federal cases involving Title VII in construing the WVHRA. *See, e.g., Frank's Shoe Store v. W. Va. Hum. Rts. Comm'n*, 179 W. Va. 53, 59, 365 S.E.2d 251, 256-57 (1986) (recognizing cause of action for discrimination related to pregnancy); Syl. Pt. 9, *Hanlon v. Chambers*, 195 W. Va. 99, 464 S.E.2d 741 (1995) (recognizing cause of action under the WVHRA for hostile work environment where supervisory employees have been sexually harassed by subordinate employees); Syl. Pt. 1, *Willis v. Wal-Mart Stores, Inc.*, 202 W. Va. 413, 504 S.E.2d 648 (1998) (recognizing cause of action for "discrimination based upon same-gender sexual harassment"); *Shepherdstown Volunteer Fire Dept. v. State*, 172 W. Va. 627, 637, 309 S.E.2d 342, 352 (1983) (adopting the Title VII evidentiary framework for employment discrimination cases).

In *Willis v. Wal-Mart Stores, Inc.*, 202 W. Va. 413, 417, 504 S.E.2d 648, 652 (1998), which recognized that "because of … sex" included same-sex sexual harassment, the SCAWV observed that "[o]ur 'longstanding practice of applying the same analytical framework used by federal courts when deciding cases arising under the [WVHRA]' is particularly fitting when, as in this case, the critical language of our Act – 'because of sex' – parallels the federal legislation." The SCAWV has "repeatedly held that we will construe the Human Rights Act to coincide with the prevailing federal application of Title VII unless there are variations in the statutory language that call for divergent applications or there are some other compelling reasons justifying a different result." *Hanlon v. Chambers,* 195 W. Va. 99, 112, 464 S.E.2d 741, 754 (1995); see also *Barefoot v. Sundale Nursing Home*, 193 W. Va. 475, 482, 457 S.E.2d 152, 159 (1995) ("We have consistently held that cases brought under the West Virginia Human Rights Act… are governed by the same analytical framework and structures developed under Title VII, at least where our statute's language does not direct otherwise."); *Paxton v. Crabtree,* 184 W. Va. 237, 250 n.26, 400 S.E.2d 245, 258 n.26 (1990) (observing that "we have adopted federal precedent when we believed it was compatible with our human rights statute"); *W. Va. Hum. Rts. Comm'n v. Wilson*

---

[18] In her dissent in *Butler*, Justice Workman relied on cases construing the "because of … sex" language in civil discrimination cases. The fact that the SCAWV took pains to distinguish the analysis of those words in civil cases suggests that the SCAWV believed that her arguments would have merit in civil cases and therefore had to argue that criminal cases were different.

*Estates, Inc.,* 202 W. Va. 152, 158, 503 S.E.2d 6, 12 (1998) ("This Court has consistently looked to federal discrimination law dealing with Title VII…when interpreting provisions of our state's human rights statutes."). In this case, there are no differences in statutory language or "other compelling reasons" which would require us to decline to follow the Supreme Court's holding that discrimination "because of sex" includes discrimination based on "sexual orientation."[19]

In *Bostock v. Clayton Cnty,* 590 U.S. 644, 660 *(*2020),[20] the United States Supreme Court held that discrimination because of sexual orientation constituted discrimination because of sex, reasoning that "it is impossible to discriminate against a person for being homosexual… without discriminating against that individual based on sex." This holding under Title VII has already been adopted with regard to the WVHRA by a federal district court and the West Virginia Human Rights Commission, and other states have followed *Bostock* in interpreting their own human rights acts to prohibit discrimination based on sexual harassment.[21]

In *Jarrell v. Hardy Cellular Tel. Co*., Civil Action No. 2:20-CV-00289, 2020 WL 4208533 (S.D. W. Va. 2020), Judge Berger adopted the reasoning of *Bostock*, holding that the WVHRA covered discrimination based on same-sex relationships. The circuit court referred to *Jarrell* but refused to apply it because it was decided before the 2022 Senate Bill which would have amended the WVHRA to include "sexual orientation" as a protected class failed to get out of committee, thus improperly relying on post-enactment legislative history.

Significantly, the West Virginia Human Rights Commission, the state agency charged with enforcement of the WVHRA, adopted the reasoning of the *Bostock* and

[19] The majority opinion does not identify any differences in language which would require a different reading of our discrimination statute, but it does assert that its "conclusion that the word 'sex' in the WVHRA plainly does not encompass 'sexual orientation' is a compelling reason to justify a different result than that reached in *Bostock*." At best this is circular reasoning: In essence, the majority is saying that there is a compelling reason to read our statute differently because we are reading our statute differently.

[20] *Bostock* was a 6-3 decision in three consolidated cases involving sexual orientation and transgender status. Justice Gorsuch wrote the opinion for the majority, which included himself and Justices Roberts, Ginsburg, Breyer, Sotomayer, and Kagan. Justices Alito, Thomas, and Kavanaugh dissented.

[21] *See Rouch World, LLC v. Dept. of Civil Rights*, 987 N.W.2d 502 (Mich. 2022); *Tarrant Cnty Coll. Dist. v. Sims*, 621 S.W.3d 323 (Tex. Ct. App. 2021).

*Jarrell* cases in holding that discrimination based on sexual orientation is actionable under the WVHRA. *See Robb Livingood v. Pub. Def. Corp.*, Docket No. ES-192-18 (2021). An agency's interpretation of the statute it enforces is entitled to considerable deference. *St. Joseph's Hosp. v. Stonewall Jackson Mem. Hosp. Co.*, 250 W. Va. 378, ___, 903 S.E.2d 247, 254 (2024). Neither the majority nor the circuit court discussed this agency decision or the deference due under West Virginia law to an agency's interpretation of the law it administers.

The SCAWV follows federal jurisprudence under Title VII in part because Title VII was a model for some of the language in the WVHRA, but also to promote uniformity between federal and state discrimination law, which it has held "is valuable *per se*."[22] *WVU v. Decker*, 191 W. Va. 567, 573, 447 S.E.2d 259, 265 (1994).[23] The importance the SCAWV places on uniformity in discrimination law was demonstrated by the way it changed the standard for proving disparate impact under the WVHRA when the standard changed under Title VII. The federal standard for proving disparate impact was first articulated in *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971), but *Griggs* was overruled by *Wards Cove Packing Co., Inc. v. Atonio*, 490 U.S. 642 (1989). When *Guyan Valley Hospital, Inc. v. W. Va. Hum. Rts. Comm'n*, 181 W. Va. 251, 382 S.E.2d 88 (1989) was decided, it adopted the *Wards Cove* standard because *Wards Cove* was the most recent Supreme Court case on disparate impact. In 1991, however, Congress passed legislation to codify the concepts of "business necessity" and "job related" enunciated in *Griggs*, effectively overruling *Wards Cove*. Consequently, in *WVU v. Decker*, the SCAWV changed the test for disparate impact set forth in *Guyan Valley*, "essentially returning us to the previous standard established by the Supreme Court in *Griggs*, for the same reason that we turned away from the *Griggs* standard, namely uniformity." *Id.* at 574, 447 S.E.2d at 266.

In some cases where the SCAWV has followed the "prevailing federal application of Title VII," there was a definitive ruling by the Supreme Court of the United States. S*ee, e.g.*, *Guyan Valley Hospital, Inc. v. W. Va. Hum. Rts. Comm'n*, 181 W. Va. 251, 382 S.E.2d 88 (1989); *Willis v. Wal-Mart Stores, Inc.*, 202 W. Va. 413, 504 S.E.2d 648 (1998); *Shepherdstown Volunteer Fire Dept. v. State*, 172 W. Va. 627, 637, 309 S.E.2d 342, 352

---

[22] Similarly, our state courts frequently look to federal cases for guidance in construing and applying our rules of civil procedure and evidence, which were modeled in large part on the corresponding federal rules.

[23] It is worth noting that the Legislature has sometimes passed legislation with the specific purpose of bringing our discrimination law more in line with federal jurisprudence. *See Skaggs v. Elk Run Coal Co., Inc.*, 198 W. Va. 51, 68, 479 S.E.2d 561, 578 (1996) ("After *Coffman* was decided, the Legislature amended the Human Rights Act to define disability to bring the law into line with the federal authorities.").

(1983). In other cases, there was a majority rule in the lower federal courts. *See*, *e.g.,* *Hanlon v. Chambers*, 195 W. Va. 99, 464 S.E.2d 741 (1995).

In *Stone v. St. Joseph's Hosp. of Parkersburg*, 208 W. Va. 91, 106, 538 S.E.2d 389, 404 (2000), where the SCAWV stated that the WVHRA represents an "independent approach" which "is not mechanically tied to federal disability discrimination jurisprudence," there was no majority rule in the lower federal courts concerning the relevant issue, and the West Virginia legislature had recently passed legislation to broaden who could bring disability discrimination claims, thereby liberalizing the language of the WVHRA. The *Stone* court adopted the more liberal application of the Act.

In his concurring opinion in *Stone*, Justice Scott opined that there was "no legal justification for the majority's disavowal of a longstanding practice of this Court to follow federal law in discrimination cases. After all, our statutes concerning discrimination are largely modeled after federal statutes." *Id*. at 110, 538 S.E.2d at 408. "Based upon [the Court's] well-established practice," he was "perplexed by dicta in the majority opinion that this Court has only followed federal law in the discrimination arena 'on occasion.' To the contrary, this Court has routinely looked to and followed federal law when interpreting and applying statutes relating to discrimination." *Id.* at 111, 538 S.E.2d at 409. He was "further concerned by dicta in the majority opinion which 'recognize[s] that the West Virginia Human Rights Act, as created by our Legislature and as applied by our courts and administrative agencies, represents an independent approach to the law of disability discrimination that is not mechanically tied to federal disability discrimination jurisprudence'" because "[t]his dicta could be interpreted by readers as suggesting that we reject in wholesale fashion the historical approach taken by this Court in looking to federal discrimination law for guidance where the statutory language at issue is substantially similar." *Id*. He then suggested "that both the circuit courts and the Bar continue to utilize this Court's well-established practice of following federal discrimination law where statutory language is substantially similar." *Id.* at 111-12, 538 S.E.2d at 409-10.

Even after the *Stone* decision, the SCAWV has continued to recognize and follow its practice of looking to Title VII jurisprudence when construing and applying the WVHRA. *See Ways v. Imation Enter. Corp*., 214 W. Va. 305, 315 n.9, 589 S.E.2d 36, 46 n.9 (2003) ("…this Court has consistently held that cases brought under the West Virginia Human Rights Act, … are governed by the same analytical framework and structures developed under Title VII, at least where our statute's language does not direct otherwise.") (internal quotation marks omitted); *Frame v. JPMorgan Chase*, No. 12-0967, 2013 WL 3184755, at *2 (W. Va. June 24, 2013) (memorandum decision) (citing federal Title VII case for support). If the SCAWV had intended to abandon its longstanding practice of looking to Title VII jurisprudence to define our law under the WVHRA, surely it would have announced that decision in a syllabus point. *See generally Romeo v. Antero Res. Corp.,* No. 23-589, 2024 WL 4784706, at *4 (W. Va. 2024). The majority's failure to follow the many precedents calling on courts, when possible, to look to Title VII

17

jurisprudence in construing and applying the WVHRA, gives short shrift to the important doctrine of stare decisis, which exists "to promote certainty, stability, and uniformity in the law." Syl. Pt. 2, *Dailey v. Bechtel Corp.*, 157 W. Va. 1023, 207 S.E.2d 169 (1974). Stare decisis helps to ensure that parties in similar situations receive similar treatment and reduces the risk that a judge's personal and political views might determine the outcome of a particular case.[24] Courts should not deviate from applying stare decisis "absent some urgent and compelling reason." *Id.* at 1029, 207 S.E.2d at 173 (1974).

## D. Post-Enactment Legislative History

In addition to the language of the WVHRA, my colleagues attempt to rely on the legislative history of the act after it was first enacted, noting that there have been several unsuccessful attempts to amend the act to explicitly refer to the words "sexual orientation" to the list of protected classes in the definition of "discriminate." Most recently, for example, in January 2022, S.B. 156, a Senate bill to amend the WVHRA to explicitly refer to "sexual orientation" did not get out of committee. The failure of the Legislature to amend the WVHRA to include sexual orientation as a protected class is not compelling evidence that the Legislature did not intend to prevent discrimination based on sexual orientation because there are many reasons why a proposed amendment might not pass.

> Legislative history ... is notoriously malleable. Even worse is the temptation to try to divine the significance of unsuccessful legislative efforts to change the law. Those failures can mean almost anything, ranging from the lack of necessity for a proposed change because the law already accomplishes the desired goal, to the undesirability of the change because a majority of the legislature is happy with the way the courts are currently interpreting the law, to the irrelevance of the non-enactment, when it is attributable to nothing more than legislative logrolling or gridlock that had nothing to do with its merits.

*State v. Butler*, 239 W. Va. 168, 182 n.7, 799 S.E.2d 718, 732 n.7 (2017) (Workman, J., dissenting) (quoting *Hively v. Ivy Tech Cmty. College of Ind.*, 853 F.3d 339, 343-44 (7th

---

[24] The importance of stare decisis was discussed at length in Justice Breyer's dissenting opinion in *Dobbs v. Jackson*, 597 U.S. 215 (2022) (Breyer, J., dissenting) in which he observed that: "Stare decisis …contributes to the integrity of our constitutional system of government by ensuring that decisions are founded in the law rather than the proclivities of individuals'" *Id.* at 388 (internal quotation marks omitted). "[A]s Blackstone said… it keeps the scale of justice even and steady, and not liable to waver with every new judge's opinion." *Id.* (internal quotation marks omitted). "Our legitimacy [as a court] requires, above all, that we adhere to stare decisis in sensitive political contexts where partisan controversy abounds." *Id.* at 413 (internal quotation marks omitted).

Cir. 2017)); *see also United States v. Craft,* 535 U.S. 274, 287 (2002) ("[c]ongressional inaction lacks persuasive significance because several equally tenable inferences may be drawn from such inaction, including the inference that the existing legislation already incorporated the offered change.") (internal citation and quotation omitted).

The most recent attempt in 2022 to amend the WVHRA may have failed precisely because legislators believed that an amendment was unnecessary given that the SCAWV follows Title VII cases in interpreting and applying the WVHRA and the Supreme Court of the United States had recently held in its *Bostick* opinion that Title VII prohibited discrimination based on "sexual orientation."[25] Or they may have voted against the amendment because they were aware of the 2021 decision by the West Virginia Human Rights Commission construing the WVHRA consistently with the *Bostock* holding, or the federal decision in *Jarrell* adopting *Bostock's* reasoning.

In any event, the argument based on post-enactment legislative history requires us to speculate concerning the Legislature's intent and provides little if any support for upholding the decision of the circuit court.[26] *See generally Appalachian Power Co. v. State Tax Dept. of WV*, 195 W. Va. 573, 587 n.16, 466 S.E.2d 424, 438 n.16 (1995) ("We do not believe that post-enactment legislative history is entitled to substantial consideration in construing a statute."); *Bostock v. Clayton Cnty.*, 590 U.S. 644, 670 (2020) ("speculation about why a later Congress declined to adopt new legislation offers a 'particularly dangerous' basis on which to rest an interpretation of an existing law a different and earlier Congress did adopt."); *Sullivan v. Finkelstein*, 496 U.S. 617, 632 (1990) (Scalia, J.,

---

[25] Presumably, the Legislature was aware of the *Bostock* decision, and of the numerous holdings by the SCAWV that the WVHRA should be interpreted consistently with Title VII. *See generally* Syl. Pt. 1, *Duff v. Kanawha Cnty Comm'n,* 250 W. Va. 510, 905 S.E.2d 528 (2024) ("It is a settled principle of statutory construction that courts presume the Legislature drafts and passes statutes with full knowledge of existing law."); *Messer v. Huntington Anesthesia Group, Inc*., 218 W. Va. 4, 22, 620 S.E.2d 144, 162 (2005) (Maynard, J., dissenting) ("This Court always presumes that the Legislature is aware of existing law and intends its legislative enactments to harmonize therewith."); Syl. Pt. 5, *State v. Snyder*, 64 W. Va. 659, 63 S.E. 385 (1908) (it is "presumed that the legislators who drafted and passed [a statute] were familiar with all existing law applicable to the subject-matter, whether constitutional, statutory, or common, and intended the statute to harmonize completely with the same…").

[26] One of the reasons why it is difficult to glean legislative intent from unsuccessful attempts to amend an existing statute is that the proposed bill often contains multiple changes. For example, the 2022 bill to amend the WVHRA included language changes concerning gender identity and familial status as well as sexual orientation. In such situations, it is hard to tell which part of a bill a particular legislator was voting for or against.

19

concurring) ("Arguments based on subsequent legislative history…should not be taken seriously, not even in a footnote."). Not surprisingly, the record submitted for our review contains no evidence regarding why particular legislators, or the legislature collectively, may have proposed certain amendments to the WVHRA or voted against them. *See generally Appalachian Power Co.*, 195 W. Va. at 586 n.14, 466 S.E.2d at 437 n.14 ("[n]ormally, legislative history in West Virginia is difficult to discover….").

**E. Purpose and Construction**

The majority opinion concludes that the "plain meaning" of the language in the WVHRA does not prohibit discrimination based on sexual orientation, then launches into a discussion of the post-enactment legislative history of West Virginia Code § 5-11-3(h). Ordinarily, if statutory language has a "plain meaning" it does not need to be interpreted, *see Pajak v. Under Armour, Inc*., 246 W. Va. 387, 392, 873 S.E.2d 918, 923 (2022), and thus there is no need to resort to tools of statutory interpretation such as legislative history. *See TVA v. Hill*, 437 U.S. 153, 184 n.29 (1978) ("When confronted with a statute which is plain and unambiguous on its face, we ordinarily do not look to legislative history as a guide to its meaning."); *U.S. v. Woods*, 571 U.S. 31, 46 n.5 (2013) ("We do not consider Woods' arguments based on legislative history. Whether or not legislative history is ever relevant, it need not be consulted when, as here, the statutory text is unambiguous."); *Milner v Dept. of the Navy*, 562 US 562, 572 (2011) (refusing to "allow[ ] ambiguous legislative history to muddy clear statutory language").

I agree with the majority that 5-11-3(h) has a plain meaning, but I disagree as to what that plain meaning is. I believe that the "because of…sex" language in this section plainly prohibits discrimination on the basis of sexual orientation. Assuming that the language is ambiguous, however, I find the "Declaration of Policy," "Unlawful Discriminatory Practices," and "Construction; Severability" sections of the WVHRA, which were enacted by the Legislature, much more illuminating than speculation about the post-enactment legislative history. While considering that history, the majority ignores other important indicators of legislative intent.

I also note that the plain meaning of a statute is not controlling "in the rare case in which literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters. In such case, it is the legislative intent, rather than the strict language, that controls." Syl. Pt. 2, *Worley v. Beckley Mech., Inc*., 220 W. Va. 633, 648 S.E.2d 620 (2007); *see also State v. Frazier*, 193 W. Va. 20, 24, 454 S.E.2d 65, 69 (1994) ("Courts…may venture beyond the plain meaning of a statute in the rare instances in which there is a clearly expressed legislative intent to the contrary,…in which a literal application would defeat or thwart the statutory purpose, … or in which a literal application of the statute would produce an absurd or unconstitutional result…"). In any event, if you are going to consider the post-enactment history of the section, you should also consider the

other language in the statute. When the language "because of …sex" is considered in the context of the entire WVHRA, it becomes even more apparent that discrimination based on sexual orientation is discrimination because of sex.[27]

The "Declaration of Policy" contained in the WVHRA explains the objectives and purposes of the Act, as follows:

> It is the public policy of the state of West Virginia to provide all of its citizens equal opportunity for employment.... Equal opportunity in the areas of employment and public accommodations is hereby declared to be a human right or civil right of all persons.... The denial of these rights to properly qualified persons by reason of …sex,… is contrary to the principles of freedom and equality of opportunity and is destructive to a free and democratic society.

W. Va. Code 5-11-2 (1998).

Also relevant is the section designated "Discriminatory Practices," W. Va. Code § 5-11-9(1) (emphasis added), states in pertinent part that it is: "an unlawful discriminatory practice… [f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment **if the individual is able and competent to perform the services required**." Finally, the section designated "Construction; Severability," W. Va. Code § 5-11-15 (emphasis added), provides that the WVHRA "**shall be liberally construed to accomplish its objectives and purposes.**"

Reading these statutory provisions together, it seems obvious that it was the purpose and intent of the legislature to prohibit discrimination based on an immutable factor such

---

[27] *See Conrad v. ARA Szabo*, 198 W. Va. 362, 480 S.E.2d 801 (1996), where the court considered not just the language of the statute but the statutory requirement of liberal construction and the purpose of the statute. As the SCAWV explained in *ARA Szabo*:

> Bearing in mind § 5–11–15's admonition of calling for a liberal interpretation of the Act, we conclude that the plaintiff's interpretation is the preferred one. Several reasons explain our selection. First, it permits us to give the statute's language its literal meaning…. Second, we think the plaintiff's interpretation better promotes the purpose of the statute, which is, of course, to guarantee equal opportunity to all persons regardless of their gender, race, religion, etc. Third, no reason exists to insulate an employer from liability if it obstructs the employment opportunities of any individual because of her gender even if she works for, or seeks work with, some other employer.

*Id.* at 377, 480 S.E.2d at 816.

as sexual orientation that was not relevant to a person's ability to perform their job. "When our legislature enacted the Human Rights Act, it intended to eliminate all discriminatory practices including discriminatory treatment of men, as well as women." [28]*Frank's Shoe Store v. W. Va. Hum. Rts. Comm'n*, 179 W. Va. 53, 59, 365 S.E.2d 251, 257 (1986). As the Court stated in *Peters v. Narick*, 165 W. Va. 622, 632, 270 S.E.2d 760, 765-66 (1980), "[c]lassifications based on factors that bear no relationship to ability to perform, such as classifications based upon gender, have the effect of relegating the entire class to inferior legal status without regard to individual capabilities." Thus, the majority not only reaches the wrong conclusion concerning what "because of sex" means, it adopts a construction of the WVHRA contrary to the purpose and goals of the Act. As the Court noted in Syllabus Point 9 of *Bailey v. Norfolk & Western Ry. Co.*, 206 W. Va. 654, 527 S.E.2d 516 (1999):

> " ' "A statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith." Syllabus Point 5, *State v. Snyder,* 64 W.Va. 659, 63 S.E. 385 (1908).' Syl. Pt. 1, *State ex rel. Simpkins v. Harvey,* [172] W.Va. [312], 305 S.E.2d 268 (1983)." Syl. Pt. 3, *Shell v. Bechtold,* 175 W. Va. 792, 338 S.E.2d 393 (1985).

## F. The Scope of the Majority Opinion

Having addressed what the majority opinion held, I would like to point out what it did not. First, it did not say whether workplace discrimination against a person based on his or her sexual orientation by a government entity violates the equal protection or due process guarantees of our state and federal constitutions. *See generally Obergefell v. Hodges*, 576 U.S. 644 (2015) (laws prohibiting same-sex marriages violate equal protection and due process); *Romer v. Evans*, 517 U.S. 620 (1996) (provision of Colorado constitution forbidding any organ of government from taking any action designed to protect "homosexual, lesbian, or bisexual" persons violated equal protection); *Lawrence v. Texas*, 539 U.S. 558 (2003) (Texas statute criminalizing homosexual intimacy between consenting

---

[28] The Declaration of Independence proclaims that all men are created equal. That principle is one of the pillars of our form of government, and the basis of both Title VII and the WVHRA, which represent part of our ongoing effort to make that aspiration a reality. As the SCAWV observed in *Allen v. W. Va. Hum. Rts. Comm'n*, 174 W. Va. 139, 149, 324 S.E.2d 99, 109 (1984): "Equal opportunity in this State is a fundamental principle which has its foundation in … constitutional provisions. The Human Rights Act breathes life into these constitutional provisions which mandate equal opportunity…"

adults violated liberty provision of due process clause); *Commonwealth v. Carter*, 172 N.E.3d 367 (Mass. 2021) (juror strike based on sexual orientation violated equal protection under both state and federal constitutions); *M.E. v. T.J.,* 854 S.E.2d 74 (N.C. Ct. App. 2020) (denial of domestic violence protective order in same-sex dating relationship violated both state and federal constitutions).[29]

Second, the majority opinion does not speak to associational discrimination or gender stereotyping because those concepts were not raised by the parties or considered by the circuit court. *See generally Price Waterhouse v. Hopkins,* 490 U.S. 228 (1989) (gender stereotyping); *State v. Butler*, 239 W. Va. 168, 799 S.E.2d 718 (2017) (Workman, J., dissenting) (discussing both associational discrimination and gender stereotyping in the context of sexual orientation); *WVU v. Decker*, 191 W. Va. 567, 576, 447 S.E.2d 259, 268 (1994) ("**The objective of anti-discrimination statutes was to break stereotypes** and give people a chance who had previously been unjustifiably excluded from the work force.") (emphasis added); *Livingood v. Public Defender Corp.*, Docket N.ES-192-18 (2021); *Cf. Loving v. Virginia*, 388 U.S. 1 (Virginia law prohibiting interracial marriages violated due process and equal protection); Syl. Pt. 3, *WVHRC v. Wilson Estates, Inc.,* 202 W. Va. 152, 503 S.E.2d 6 (1998) (recognizing associational discrimination in housing based on race).

### G. Conclusion

In reaching its conclusion, the majority ignores longstanding precedent directing us to follow Title VII jurisprudence in interpreting and applying the WVHRA unless it is inconsistent with the language or there is some other compelling reason. If the majority had followed this directive, it would have adopted the *Bostock* holding that "because of… sex" includes discrimination based on sexual orientation.

In reaching its conclusion, the majority ignores precedent established by our state decisions recognizing that pregnancy, sexual harassment, and same-sex harassment constitute discrimination "because of … sex," instances where the SCAWV recognized sexual discrimination despite the absence of statutory language expressly referring to a particular form of discrimination.

In reaching its conclusion, the majority ignores the persuasive authority of the federal decision in *Jarrell* from the Southern District of West Virginia holding that "because of… sex" in the WVHRA includes discrimination based on sexual orientation,

---

[29] I note in this regard that the *Butler* court made it clear that it was not addressing the issue of equal protection when it considered the meaning of "because of … sex" in the context of our hate crime statute. *See Butler,* 239 W. Va. at 178 n.24, 799 S.E.2d at 728 n.24.

and the persuasive authority of state cases from other jurisdictions adopting the reasoning of *Bostock* when interpreting and applying their own antidiscrimination statutes with similar language.

In reaching its conclusion, the majority ignores precedent recognizing that uniformity between federal and state discrimination law is valuable per se and adopts a reading of the WVHRA that is markedly different than the prevailing jurisprudence of Title VII, despite the absence of any difference in the language of the two statutes or some other compelling reason to do so.

In reaching its conclusion, the majority ignores the *Livingood* decision by the West Virginia Human Rights Commission and fails to discuss our jurisprudence concerning the deference due an agency decision construing the law it administers.

In reaching its conclusion, the majority ignores well established rules of statutory construction, professing to follow the "plain meaning" rule that an unambiguous statute does not need to be interpreted while resorting to a tool of statutory interpretation, *i.e.,* post-enactment legislative history. Indeed, it employs possibly the least reliable tool of statutory construction; at the same time it ignores the express language of the statute regarding its purpose and liberal construction.

For the foregoing reasons, and with a healthy respect for precedent, which is so important to the rule of law, I respectfully dissent from the majority opinion.